**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BAKERSFIELD ENERGY PARTNERS,
LP, ROBERT SHORE, STEVEN FISHER,
GREGORY MILES, SCOTT MCMILLAN,
PARTNERS OTHER THAN THE TAX
MATTERS PARTNERS,
            *Petitioners-Appellees,*

        v.

COMMISSIONER OF INTERNAL
REVENUE,
            *Respondent-Appellant.*

No. 07-74275

Tax Ct. No. 4204-
06

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
February 9, 2009—Pasadena, California

Filed June 17, 2009

Before: Andrew J. Kleinfeld, Carlos T. Bea, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

7197

**COUNSEL**

Steven R. Mather, Beverly Hills, California, for the petitioners-appellees.

Joan I. Oppenheimer, Washington, D.C., for the respondent-appellant.

**OPINION**

IKUTA, Circuit Judge:

The IRS generally has three years after a return is filed to assess a tax deficiency, but it has six years to do so when the return "omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." 26 U.S.C. § 6501(a), (e)(1)(A). This case requires us to decide whether the IRS can use this extended six-year limitations period to assess a deficiency where a taxpayer has overstated its basis in an asset and thereby lowered the amount of gross income reported in its return. In other words, does a taxpayer "omit[ ] from gross income an amount properly includible therein" for purposes of § 6501(e)(1)(A) by overstating its basis? We conclude, like the Tax Court below, that we are bound by *Colony, Inc. v. Comm'r*, 357 U.S. 28, 33 (1958), which held that a taxpayer's overstatement of basis does not "omit[ ] from gross income an amount properly includible therein" for purposes of § 6501(e)(1)(A). Accordingly, the IRS had only three years to assess the tax deficiency at issue in this case, and it failed to

do so. We therefore affirm the Tax Court's judgment in favor of the taxpayer.

I

Bakersfield Energy Partners, LP (Bakersfield), the taxpayer in this case, is a limited partnership that owned an interest in oil and gas property.[1] A third party, Seneca, offered to purchase the property for $23,898,611.

According to the IRS, before the sale was consummated, four of the seven partners in Bakersfield took a series of steps that led Bakersfield to increase its basis in its oil and gas property and thereby decrease its gross (and potentially taxable) income from the sale.[2] Before taking these steps, Bakersfield's basis in the oil and gas property was zero.

The steps were as follows: First, the four partners formed a new partnership, Bakersfield Resources, LLC (Resources). Second, the four partners sold their partnership interests in Bakersfield to Resources for $19,924,870. The four partners collectively owned 76.3% of Bakersfield; by selling more than half of the total partnership interests in Bakersfield, they caused a technical termination of the Bakersfield partnership and the formation of a new Bakersfield partnership in which Resources held a 76.3% interest. *See* 26 U.S.C.

---

[1]Bakersfield's notice partners are also parties to this appeal. A "notice partner" is a partner whose name appears on the partnership's return and who has the right to petition the Tax Court for readjustment. *See* 26 U.S.C. §§ 6223(a), 6226(b)(1). Because Bakersfield's notice partners have the same interests and arguments as Bakersfield, we refer to them collectively as "Bakersfield" throughout this opinion.

[2]"Basis" is the cost of acquiring an asset, as adjusted by various other factors, such as depreciation over time. *See* 26 U.S.C. § 1012. In general, a taxpayer's gross income includes gains from sales of property, where "gain" is defined as the sales price minus the taxpayer's basis in the property. *See* 26 U.S.C. § 61(a)(3); 26 C.F.R. § 1.61-6(a). Increasing the basis therefore reduces the amount of gross (and potentially taxable) income.

§ 708(b)(1)(B). Third, the new Bakersfield partnership made use of certain tax provisions that allow a partnership to elect to increase its basis in partnership assets following a transfer of a partnership interest. *See* 26 U.S.C. §§ 754, 743. In this case, Bakersfield made an election under § 754 to adjust its basis in all of its assets by the $19,924,870 sales price of the partnership interests sold to Resources. Bakersfield allocated $16,515,194 of its new $19,924,870 basis to the oil and gas property and the remainder to its other assets. Fourth, after completing these steps to adjust its basis in its oil and gas property, Bakersfield consummated the sale of its oil and gas property to Seneca for $23,898,611 in May 1998.

On October 15, 1999, Bakersfield filed a partnership return for the tax year ending December 1998. The return reported that Bakersfield's gain from the sale of the oil and gas property was $7,383,417: the sales price of the oil and gas property ($23,898,611) minus its new adjusted basis ($16,515,194). Bakersfield's return also stated that its gain was reduced by mining exploration costs of $1,993,034. Accordingly, Bakersfield's return recognized a net taxable gain of $5,390,383 from the sale of the oil and gas property (the $7,383,417 gain minus the $1,993,034 in mining and exploration costs).

Bakersfield's partnership return included a short statement explaining its claimed basis:

> Pursuant to IRC Sec. 708(b)(1)(B) and the regulations thereunder, Bakersfield Energy Partners, LP terminated on April 1, 1998. On that date, certain partners sold over a 50% ownership interest in the partnership's capital and profits to Bakersfield Resources, LLC (TEIN 77-0479718). On April 7, 1998, Bakersfield Resources, LLC acquired additional partnership interests through purchases. These transactions resulted in a new partnership for federal

> income tax purposes (the "new" partnership retains the same federal employer identification number).
>
> As reflected within the capital accounts, the partnership books were restated to reflect the value of the assets as required in the regulations under IRC 704. As reflected within this return, in the event of a sale of these assets proper adjustments have been made to reflect the tax basis and the proper taxable gain.

Bakersfield also attached a statement indicating its election under 26 U.S.C. § 754 to adjust the basis in its assets in accordance with § 743(b)(1).

On October 4, 2005, almost six years after the return was filed on October 15, 1999, the IRS mailed Bakersfield a notice of final partnership administrative adjustment (FPAA). An FPAA tolls the limitations period in which the IRS can assess a tax deficiency. *See* 26 U.S.C. §§ 6503(a)(1), 6229(d). The IRS conceded before the Tax Court that, if the FPAA was untimely, there was no other basis for tolling the limitations period for any assessment and that summary judgment should therefore be entered in favor of Bakersfield. *See Bakersfield Energy Partners v. Comm'r*, 128 T.C. 207, 212 (2007).

The FPAA claimed that Bakersfield's adjustment of its basis in the oil and gas property from zero to $16,515,194 was invalid because it "was the result of a sham transaction, a transaction lacking economic substance that had no business purpose and no economic effect and/or was availed for tax avoidance purpose and should not be respected for tax purposes." Because the IRS determined that Bakersfield's basis in the oil and gas property was zero, not $16,515,194, the IRS calculated that Bakersfield's gain from the sale of the oil and gas property to Seneca was $21,905,577, not $5,390,383. Based on this calculation, the IRS determined that Bakersfield had underpaid its taxes and was also liable for a 40% penalty on the underpayment.

Bakersfield petitioned the Tax Court for readjustment. Before the Tax Court, the parties filed cross-motions for summary judgment. Bakersfield claimed, among other things, that the FPAA was untimely under the three-year limitations period in 26 U.S.C. § 6501(a).[3] The IRS argued that the FPAA was timely under the six-year limitations period in 26 U.S.C. §§ 6501(e)(1)(A)[4] and 6229(c)(2).[5] These provisions

---

[3]Section 6501(a) provides, in pertinent part:

Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) . . . and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

[4]26 U.S.C. § 6501(e) states:

Substantial omission of items. Except as otherwise provided in subsection (c)—

(1) Income taxes. In the case of any tax imposed by subtitle A—

(A) General rule. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—

(i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

(ii) In determining the amount omitted from gross income, there shall not be taken into account any

give the IRS six years in which to assess a tax when "the tax-payer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." 26 U.S.C. § 6501(e)(1)(A). The IRS claimed that, because this provision applied to Bakersfield's 1998 return, the FPAA was timely.

Applying the Supreme Court's decision in *Colony* to § 6501(e)(1)(A), the Tax Court determined that the three-year limitations period applied. See *Bakersfield*, 128 T.C. at 215-16. Accordingly, the Tax Court held that the IRS's FPAA was untimely and granted Bakersfield's motion for summary judgment. The IRS timely appeals. We have jurisdiction under 26 U.S.C. § 7482.

---

> amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

[5]26 U.S.C. § 6229 applies to partnerships subject to the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub L. No. 97-248, 96 Stat. 324. Subsection (a) provides a minimum time period in which the IRS can assess a tax deficiency. Section 6229(a) states, in pertinent part:

> Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—
>
> > (1) the date on which the partnership return for such taxable year was filed, or
> >
> > (2) the last day for filing such return for such year (determined without regard to extensions).

Subsection (c)(2) extends this three-year minimum to six years in cases where a "partnership omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in its return." This language is identical to that contained in 26 U.S.C. § 6501(e)(1)(A), and the IRS concedes that the two provisions have the same meaning. We therefore limit our discussion to § 6501.

This case turns on whether the general three-year limitations period in § 6501(a), or the extended six-year limitations period in § 6501(e)(1)(A), applies to Bakersfield's 1998 partnership return, which was filed almost six years before the IRS mailed its FPAA to Bakersfield. The Supreme Court addressed this precise question over sixty years ago in *Colony*, when it interpreted the same language in an earlier version of the tax code. Thus the primary legal dispute in this case is whether *Colony* is controlling or whether it is distinguishable.[6]

## II

Understanding the parties' arguments requires an overview of the extended limitations period in § 6501(e)(1)(A) and its precursor, § 275(c), which was the provision construed by the Supreme Court in *Colony*.

Section 275(c) of the 1939 tax code provided:

> If the taxpayer *omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return*, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

26 U.S.C. § 275(c) (1934 & Supp. V), 53 Stat. 86-87 (emphasis added). Other than replacing the five-year period with a six-year period, and "per centum" with "percent," this language in the 1939 Code is identical to the language in the body of the current provision, 26 U.S.C. § 6501(e)(1)(A).[7]

---

[6]Alternatively, Bakersfield argues that its tax return adequately disclosed the amount of gross income in dispute under 26 U.S.C. § 6501(e)(1)(A)(ii). We do not reach this issue.

[7]As discussed below, although Congress copied the majority of the language from § 275(c) into the body of § 6501(e)(1)(A), Congress also added two subparagraphs to § 6501(e)(1)(A), *see* § 6501(e)(1)(A)(i) and (ii), which did not appear in § 275(c).

The 1939 Internal Revenue Code, like the current code, generally defined "gross income" as including gains from "dealings in property" and provided that "gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis." 26 U.S.C. § 22(a) (1934 & Supp. V), 53 Stat. 9; 26 U.S.C. § 22(f) (1934 & Supp. V), 53 Stat. 12; 26 U.S.C. § 111(a) (1934 & Supp. V), 53 Stat. 37. In other words, "gross income" under the 1939 Code had the same general meaning that it does under the current code: the total amount of money received (i.e., "gross receipts") minus basis. *See* 26 U.S.C. § 61(a); 26 C.F.R. § 1.61-1(a).

Given this definition of "gross income," disputes arose over whether the extended limitations period of § 275(c) applied if a taxpayer overstated its basis. A taxpayer that overstated its basis would report an erroneously low amount of gross income, since gross income was defined as the difference between gross receipts and basis. This court, as well as the majority of other courts addressing the issue, determined that an overstatement of basis was not an omission of an amount from gross income under § 275(c). In *Slaff v. Comm'r*, we sided with the majority of the circuits to address the question and held that the general three-year limitations period was applicable where a taxpayer reported the income he had received overseas on his tax forms but erroneously claimed it was excluded from gross income. 220 F.2d 65, 68 (9th Cir. 1955) ("From the day these returns were filed it was plainly revealed that this taxpayer had earned $3300 and said amount was claimed to be exempt . . . . How such a plain statement can be construed as an omission is difficult for us to understand under the circumstances."); *see also Uptegrove Lumber Co. v. Comm'r*, 204 F.2d 570, 573 (3d Cir. 1953) (holding that a manufacturing corporation's tax return did not make an omission from gross income when it erroneously inflated its cost of goods sold). *But see Reis v. Comm'r*, 142 F.2d 900, 903 (6th Cir. 1944) (holding that the five-year limitations period applied where the "petitioner adopted an incorrect

basis" because it resulted in an understatement of more than 25% of the gross income properly stated in the return).

In 1954, Congress enacted a new tax code. The 1954 Code, still in effect as amended,[8] reenacted § 275(c) as § 6501(e)(1)(A). *See Benson v. Comm'r*, 560 F.3d 1133, 1135 -36 (9th Cir. 2009) (referring to § 275(c) as "the predecessor statute to § 6501(e)(1)(A)"). As noted above, § 6501(e)(1)(A) of the 1954 Code, using the same language as § 275(c), provides for an extended six-year limitations period when a "taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." Congress also added two subparagraphs to § 6501(e)(1)(A) not present in § 275(c). The first, and the one of import here, is subparagraph (i), which defines "gross income" in the case of a "trade or business" as gross receipts, i.e., the total amount of money received from a transaction, without any subtraction of cost or basis. *See* 26 U.S.C. § 6501(e)(1)(A)(i) ("In the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services."). Accordingly, in the case of a trade or business, an overstatement of basis cannot constitute an omission from gross income under the 1954 Code, because subparagraph (i) of § 6501(e)(1)(A) removes basis as a component of the definition of "gross income."[9]

---

[8]Although the 1954 Code was renamed the "Internal Revenue Code of 1986" by the Tax Reform Act of 1986, Pub. L. 99-514, § 2, 100 Stat. 2085, 2095, we follow the parties' lead and refer simply to the "1954 Code."

[9]The second addition to § 6501(e)(1)(A), subparagraph (ii), provides:

> In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

Shortly after the enactment of the 1954 Code, the Supreme Court issued its decision in *Colony*. Because *Colony* involved a tax return relating to tax years prior to 1954, *see* 357 U.S. at 29, the Court applied the 1939 Code, even though the Court was aware of and referred to the additional subparagraphs in the 1954 code, *see id.* at 32, 34.

*Colony* involved "a corporation dealing in real estate" that filed a tax return containing "understatements of gross income of more than twenty-five per cent resulting from an erroneous overstatement of the basis of land sold, rather than from any omission of gross receipts." 244 F.2d 75, 75 (6th Cir. 1957) (per curiam), *rev'd*, 357 U.S. 28 (1958). The IRS did not argue that the corporation's return had "inaccurately reported its gross receipts." 357 U.S. at 30. "Instead, the deficiencies were based upon the Commissioner's determination that the taxpayer had understated the gross profits on the sales of certain lots of land for residential purposes as a result of having overstated the 'basis' of such lots by erroneously including in their cost certain unallowable items of development expense." *Id.* The Sixth Circuit had held that § 275(c)'s extended limitations period did apply. *Id.* at 31.

The Supreme Court reversed the Sixth Circuit's decision, holding that the extended limitations period was applicable only in "the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." *Id.* at 33.

In reaching this conclusion, the Court first examined the statutory text of § 275(c) and held that, although "the statute on its face lends itself more plausibly to the taxpayer's interpretation, it cannot be said that the language is unambiguous." *See id.* On one hand, the Court noted, "the draftsman's use of the word 'amount' (instead of, for example, 'item') suggests a concentration on the quantitative aspect of the error—that is, whether or not gross income was understated by as much as

25%." *Id.* at 32. On the other hand, the Court noted that "the Commissioner's reading fails to take full account of the word 'omits,' which Congress selected when it could have chosen another verb such as 'reduces' or 'understates,' either of which would have pointed significantly in the Commissioner's direction." *Id.*

Because § 275(c) was ambiguous, the Court then examined the provision's legislative history and found "persuasive evidence that Congress was addressing itself to the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." *Id.* at 33. Concluding that Congress "did not intend the five-year limitation to apply whenever gross income was understated," *id.* at 35, the Court explained:

> Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. And this would seem to be so whether the error be one affecting "gross income" or one, such as overstated deductions, affecting other parts of the return.

*Id.* at 36.

Finally, the Court offered the following dictum, upon which the IRS in this case places considerable weight: "[W]ithout doing more than noting the speculative debate between the parties as to whether Congress manifested an

intention to clarify or to change the 1939 Code, we observe that the conclusion we reach is in harmony with the unambiguous language of § 6501(e)(1)(A) of the Internal Revenue Code of 1954." *Id.* at 37. The Court did not specify which part of § 6501(e)(1)(A) was unambiguously "in harmony with" its conclusion.

### III

**[1]** As explained above, *Colony* held that a taxpayer "omits from gross income an amount properly includible therein" for purposes of the extended limitations period in § 275(c) when the taxpayer "actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." *Colony*, 357 U.S. at 33. Here, Bakersfield did not omit any income receipt or accrual in its computation of gross income; it reported the full amount of its receipts from Seneca for the oil and gas properties. *Cf. Benson*, 560 F.3d at 1135-36 (distinguishing *Colony* and holding that the taxpayers omitted an amount from gross income by failing to report constructive dividends paid by their closely held corporations). The IRS contends only that Bakersfield overstated its basis in the property it sold. Applying *Colony*'s interpretation of § 275(c) to the substantially identical language in § 6501(e)(1)(A), Bakersfield's error does not trigger the extended limitations period.

Notwithstanding this straightforward application of *Colony*, the IRS contends that the plain language of § 6501(e)(1)(A) compels the conclusion that the taxpayer "omits from gross income an amount properly includible therein" for purposes of § 6501(e)(1)(A) when the taxpayer overstates its basis. The IRS notes that "gross income" is defined as "all income from whatever source derived," including "gains derived from dealings in property." 26 U.S.C. §§ 61(a), 61(a)(3). The "gain" from property is defined as "the excess of the amount realized therefrom over the adjusted basis." 26 U.S.C. § 1001(a).

Because gain is determined by subtracting basis from the amount realized, the IRS argues that, under a natural reading of § 6501(e)(1)(A), a taxpayer can "omit[ ] from gross income an amount properly includible therein" by overstating its basis. Other courts have agreed with this interpretation of § 6501(e)(1)(A). *See Salman Ranch Ltd. v. United States*, 79 Fed. Cl. 189, 200 (2007); *Brandon Ridge Partners v. United States*, 100 A.F.T.R. 2d 2000-5347, 2007 WL 2209129, at *7 (M.D. Fla. July 30, 2007). The IRS further supports its argument by pointing to the addition of § 6501(e)(1)(A)(i) in the 1954 Code. As noted above, subparagraph (i) removes basis as a component of the definition of "gross income" in the case of a trade or business, and therefore taxpayers in a trade or business can never be subject to the six-year limitations period merely because they overstated their basis. The IRS contends that the existence of a special rule for these taxpayers makes clear that the general rule, as set forth in the main section of § 6501(e)(1)(A), is that an overstatement of basis constitutes an omission from gross income.

The IRS's interpretation of § 6501(e)(1)(A) is reasonable. Unfortunately for the IRS, however, it is also directly contrary to Colony's construction of the same language in the predecessor statute, § 275(c). Nevertheless, the IRS contends that we are not bound by *Colony*'s interpretation of § 275(c) for two reasons. First, the IRS argues that *Colony*'s interpretation of § 275(c) is not binding because § 6501(e)(1)(A), as reenacted with the addition of subparagraph (i), is materially different from § 275(c). Second, the IRS argues that *Colony*, read correctly, interpreted § 275(c) as having the same meaning as § 6501(e)(1)(A)(i) and applying only to taxpayers in a trade or business. We consider each argument in turn.

A

The IRS first argues that we are not bound by *Colony* in interpreting § 6501(e)(1)(A) because the provision was materially altered by the addition of subparagraph (i). If we read

§ 6501(e)(1)(A) in light of subparagraph (i), the IRS argues, *Colony*'s interpretation of § 275(c) is simply inapplicable, and we must give § 6501(e)(1)(A) its plain meaning (as explained by the IRS above). The IRS also contends that it would be unreasonable to apply the Supreme Court's interpretation of § 275(c) to § 6501(e)(1)(A), because the Supreme Court's interpretation of § 275(c) would make § 6501(e)(1)(A)(i) superfluous.

The IRS points out that if we apply *Colony* to the main section of § 6501(e)(1)(A) and hold that an overstatement of basis cannot constitute an omission from gross income, then no taxpayer that overstates its basis will be subject to the six-year limitations period. Because the special definition of "gross income" as gross receipts in § 6501(e)(1)(A)(i) also means that an overstatement of basis cannot constitute an omission from "gross income" in the specific case of a trade or business, the IRS argues that applying *Colony* to § 6501(e)(1)(A) generally would render subparagraph (i) superfluous. And because "[i]t is a cardinal principle of statutory construction that a court must give effect, if possible, to every clause and word of a statute," In re Bonner Mall P'ship, 2 F.3d 899, 908 (9th Cir. 1993), the IRS argues that we cannot read *Colony*'s interpretation of § 275(c) as applying to § 6501(e)(1)(A).

**[2]** We disagree. Congress did not change the language in the body of § 6501(e)(1)(A), which is identical to the language in § 275(c) that the Supreme Court construed in *Colony*. As a general rule, we construe words in a new statute that are identical to words in a prior statute as having the same meaning. *See* 1A Norman J. Singer, *Sutherland's Statutes and Statutory Construction,* § 22.33 (6th ed. 2002) (explaining that a successor provision using equivalent language constitutes "a continuation of the original law"); *see also United States v. O'Brien*, 542 F.3d 921, 926 (1st Cir. 2008); *Strange v. Comm'r*, 114 T.C. 206, 210 n.4 (2000); *Lilly v. Comm'r*, 45 T.C. 168, 175 (1965). We therefore interpret § 6501(e)(1)(A)

in light of *Colony*. *See Benson*, 560 F.3d at 1135-36 (applying *Colony* to § 6501(e)(1)(A)).

**[3]** Although the IRS would have us infer that Congress's addition of subparagraph (i) casts the language in the body of § 6501(e)(1)(A) in a different light, we can equally infer that Congress in 1954 intended to clarify, rather than rewrite, the existing law. *See Castaneda v. United States*, 546 F.3d 682, 696 (9th Cir. 2008) (noting that "redundancies across statutes are not unusual events in drafting" and that the presumption against surplusage "applies more weakly in situations . . . in which the provision is potentially rendered superfluous by language contained in a separate, later statute" (internal formatting omitted)). In enacting the 1954 Code, Congress was presumably aware of the dispute over the interpretation of § 275(c), and it could have expressly added a definition of "omits" if it wanted to overrule the cases that concluded, as the Supreme Court later did in *Colony*, that "omits" did not include an overstatement of basis. Instead, Congress allowed the preexisting general definition of "omits" to carry forward into the successor provision, and additionally provided for a special definition of "gross income" in the case of a "trade or business." Clarifying that an overstatement of basis is not an omission from gross income in the case of a trade or business does not establish that Congress also intended to alter the general judicial construction of "omits" in all other contexts. Nor has the IRS pointed to any legislative history evincing an intent to alter the law outside the context of a trade or business.

**[4]** Moreover, we are not convinced that applying *Colony* to the 1954 Code would render § 6501(e)(1)(A)(i) superfluous. The main body of § 6501(e)(1)(A) provides:

> If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in

court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

Subparagraph (i) provides that:

> In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services.

Section 6501(e)(1)(A) requires a comparison of two numbers: (1) the "gross income" omitted with (2) the "gross income" stated in the return. If the first number divided by the second number is greater than 25%, then the six-year limitations period applies. Because § 6501(e)(1)(A)(i) changes the definition of "gross income" for taxpayers in a trade or business, it potentially affects both the numerator (the omission from gross income) and the denominator (the total gross income stated in the return). *Colony*'s holding, however, affects only the numerator, by defining what constitutes an omission from gross income.

[5] When there is no dispute about the amount of gross income omitted, the denominator, the total amount of gross income stated in the return, determines whether the omission meets the 25% threshold that triggers the six-year limitations period. For taxpayers not in a trade or business, the denominator is the amount of gross income (gross receipts minus basis); for taxpayers in a trade or business, the denominator is the total amount of money received without any reduction for basis (gross receipts). Thus, in a case where there is no dispute regarding the amount of gross income omitted, whether a taxpayer's omissions constitute more than 25% of the gross income stated in the return may depend on whether subparagraph (i)'s definition of "gross income" applies. In such cases,

subparagraph (i) may be dispositive, whether or not we accept the IRS's interpretation of *Colony*.

[6] Indeed, in numerous Tax Court cases where the amount omitted (the numerator) was not in dispute, the applicability of the six-year limitations period under § 6501(e)(1)(A) turned on whether the court was obliged to use subparagraph (i)'s special definition of "gross income" for trades and businesses when determining the amount of gross income stated in the return (the denominator). In one case, for example, the Tax Court determined that, because the special definition of "gross income" in § 6501(e)(1)(A)(i) applied, the IRS had to provide evidence of the taxpayers' share of gross receipts (rather than gains) from various partnerships they owned in order to prove that the taxpayers' omission met the 25% threshold. *See Hoffman v. Comm'r*, 119 T.C. 140, 148 (2002) ("The amount petitioners omitted, the numerator in the calculation, is not in dispute in this case. The amount omitted is $779,114. The parties disagree, however, as to the amount of gross income stated in their return."). Because the IRS could not meet its burden of proof of showing the taxpayers' gross receipts, the six-year limitation period did not apply. *See id.* at 150. Whether § 6501(e)(1)(A)(i) applied was the dispositive issue because it determined whether the omitted amount of gross income constituted more than 25% of the gross income stated in the return, wholly aside from *Colony*'s holding regarding what constitutes an omission from gross income. *See also Eagan v. United States*, 80 F.3d 13, 18 (1st Cir. 1996); *Insulglass Corp. v. Comm'r*, 84 T.C. 203, 209-10 (1985);[10] *Connelly v. Comm'r*, 45 T.C.M. (CCH) 49 (1982);

---

[10]*Insulglass* provides a numerical example: In *Insulglass*, the sole issue was "whether petitioners omitted from gross income an amount in excess of 25 percent of the amount of gross income" stated in their return for purposes of invoking the six-year limitations period for assessing a deficiency under § 6501(e)(1)(A).

There was no dispute that the taxpayers had omitted $380,030.05 from their gross income. The IRS argued that the total amount of gross income

*Philipp Bros. Chems., Inc. v. Comm'r*, 52 T.C. 240, 254-55 (1969). We therefore do not render subparagraph (i) superfluous by applying *Colony*'s holding to the same statutory language in the 1954 Code.

B

The IRS next argues that, if *Colony*'s holding does apply to the substantially identical language in § 6501(e)(1)(A), then *Colony*'s interpretation of § 275(c) applies only in the case of a trade or business. As the IRS notes, *Colony* held that the language of § 275(c) was ambiguous. The Court also stated that its conclusion was "*in harmony with the unambiguous* language of § 6501(e)(1)(A) of the Internal Revenue Code of 1954." 357 U.S. at 37 (emphasis added). The IRS reasons that, if the main section of § 275(c) is ambiguous, then the main section of § 6501(e)(1)(A) must also be ambiguous. Accordingly, the argument goes, the "unambiguous language of § 6501(e)(1)(A)" must be subparagraph (i). Thus, the IRS asserts, *Colony* was interpreting § 275(c) in a manner consistent with subparagraph (i) of § 6501(e)(1)(A), so that it

---

stated in the taxpayers' return was $628,295.92, which included $202,202.69 of capital gains from selling commodities. Under this analysis, the amount omitted from gross income ($380,030.05) would have been in excess of 25% of the amount of gross income stated in the return ($628,295.92) and the six-year limitations period would apply.

The taxpayers argued that the IRS erred in calculating the "total amount of gross income" as including only $202,202.69 of gains from selling commodities. The taxpayers argued they were engaged in the trade or business of selling commodities, and so their "gross income" under § 6501(e)(1)(A)(i) comprised their gross proceeds from the commodities sales ($5,150,585.21), not just their gains from such sales. Under this analysis, the amount omitted from gross income ($380,030.05) would not have been in excess of 25% of the amount of gross income stated in their return ($5,150,585.21), and so the six-year limitations period would not apply.

The Tax Court ultimately rejected the taxpayers' argument and held that the six-year limitations period applied, apparently on the ground that the taxpayers were not involved in a trade or business.

would be applicable only to a taxpayer engaged in a trade or business.

**[7]** We reject this argument because it overreads *Colony*'s brief references to § 6501(e)(1)(A). The Court expressly avoided construing the 1954 Code, *see Colony*, 357 U.S. at 37, and did not even hint that its interpretation of § 275(c) was limited to cases in which the taxpayer was engaged in a "trade or business." There is no ground for suggesting that the Court intended the same language in § 275(c) to apply differently to taxpayers in a trade or business than to other taxpayers. The only mention of the phrase "trade or business" in *Colony* is in a quotation from § 6501(e)(1)(A)(i). *See* 357 U.S. at 37 n.3. Under a fair reading of *Colony,* the Court provides a general construction of § 275(c) that is not limited to any particular type of taxpayer.

IV

**[8]** Interpreting § 275(c) of the 1939 Internal Revenue Code, the Supreme Court held in Colony that a taxpayer does not "omit[ ] from gross income an amount properly includible therein" by overstating its basis. *See* 357 U.S. at 32. This holding controls our interpretation of the same language in § 275(c)'s successor provision, § 6501(e)(1)(A) of the 1954 Code. However sensible the IRS's argument may be that a taxpayer can "omit . . . an amount" of gain by overstating its basis, this argument is foreclosed by *Colony*. The Court acknowledged that the statutory language was ambiguous, 357 U.S. at 33, but nonetheless rejected the same interpretation the IRS is proposing in this case. The IRS may have the authority to promulgate a reasonable reinterpretation of an ambiguous provision of the tax code, even if its interpretation runs contrary to the Supreme Court's "opinion as to the best reading" of the provision. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005); *accord Swallows Holding, Ltd. v. Comm'r*, 515 F.3d 162, 170 (3d Cir. 2008). We do not.

**[9]** Because we affirm the Tax Court on the ground that an overstatement of basis cannot constitute an omission from gross income, we need not reach Bakersfield's alternative argument that it adequately disclosed its overstated basis on its return. Under *Colony*, Bakersfield's allegedly overstated basis is not an omission from gross income under § 6501(e)(1)(A) or § 6229(c)(2). We therefore agree with the Tax Court's conclusion that the FPAA was untimely, and we AFFIRM the judgment of the Tax Court.