T.C. Memo. 2009-193

UNITED STATES TAX COURT

WILMINGTON PARTNERS L.P., WILMINGTON MANAGEMENT CORP.,
TAX MATTERS PARTNER, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket No. 15098-06.                    Filed August 26, 2009.

Roger J. Jones, Kim Marie K. Boylan, Andrew R. Roberson, and
Sarah S. Sandusky, for petitioner.

Daniel A. Rosen, for respondent.

MEMORANDUM OPINION

KROUPA, Judge:  This case is a partnership-level proceeding
subject to the Tax Equity and Fiscal Responsibility Act of 1982
(TEFRA), Pub. L. 97-248, sec. 402, 96 Stat. 648.  The partnership
at issue is Wilmington Partners, L.P. (Wilmington).  The years at

issue are two short taxable years that Wilmington reported for 1999 (respectively, 1999-1 and 1999-2).

Respondent issued Wilmington a notice of final partnership administrative adjustment (1999 FPAA) for the subject years.[1] The 1999 FPAA determined that the basis of a note (1993 Reset Note) that Wilmington received as a contribution in 1993 was zero rather than $550 million as Wilmington reported for each subject year. The 1999 FPAA determined no other adjustment for 1999-1. The 1999 FPAA determined other adjustments for 1999-2.

The Court previously decided in an unpublished order that respondent may not assess as to 1999-2 any income tax related to Wilmington because the applicable limitations period had expired. The Court stated that Bakersfield Energy Partners, LP v. Commissioner, 128 T.C. 203 (2007), affd. 568 F.3d 767 (9th Cir. 2009), controlled our decision, and the Court rejected the Commissioner's invitation to overrule Bakersfield. Petitioner now moves to dismiss this case for lack of jurisdiction.

Petitioner argues that the basis adjustment cannot be made in either year because respondent has not issued Wilmington an FPAA for 1993; i.e., the year in which the 1993 Reset Note was contributed to Wilmington. Petitioner concludes that the 1999 FPAA is invalid (and the Court lacks jurisdiction) because all

---

[1]The relevant portions of the 1999 FPAA are contained in an appendix.

adjustments in the 1999 FPAA stem from the basis adjustment.
Petitioner argues alternatively that the Court lacks jurisdiction
over 1999-1 because the 1999 FPAA does not adjust any partnership
item that subtitle A required Wilmington to take into account for
1999-1.[2]

We disagree. We hold that the 1999 FPAA is valid and that
we have jurisdiction over each year. We shall deny petitioner's
motion to dismiss.

## Background

### I. Preface

We derive the facts set forth in this background section
from the pleadings and from the parties' motion papers. We treat
the facts as true solely for purposes of deciding petitioner's
motion, not as findings of fact for this case. Cf. Samueli v.
Commissioner, 132 T.C. ___, ___ (Mar. 16, 2009) (slip op. at 4);
P & X Mkts., Inc. v. Commissioner, 106 T.C. 441, 442 n.2 (1996),
affd. without published opinion 139 F.3d 907 (9th Cir. 1998).

### II. 1993 Transactions

Wilmington was formed as a limited partnership in 1993 as
part of a financing transaction that created an influx of capital
for Bausch and Lomb, Inc. Wilmington's partners included B&L

---

[2]Subtitle and section references are to the Internal Revenue
Code, unless otherwise indicated.

International Holdings Corp. (BLIHC), among various related and unrelated partners.

BLIHC contributed the 1993 Reset Note to Wilmington in 1993, and Wilmington treated the 1993 Reset Note as an asset with a basis and fair market value of $550 million.  Wilmington's basis in the 1993 Reset Note was not affected by any event that occurred after its contribution to Wilmington until the start of 1999-2.

III.  1993 Audit

Respondent audited Wilmington's 1993 taxable year.  The audit closed seven years later with respondent's issuance of a "No Adjustments Letter."  The letter stated that respondent was making no adjustments to Wilmington's 1993 taxable year and would not issue Wilmington an FPAA for that year.  Respondent has not issued an FPAA to Wilmington for 1993.

IV.  1999 Transactions

Wilmington treated certain restructuring transactions occurring on June 4, 1999, as a partnership termination under section 708(b)(1)(B).  Wilmington accordingly reported that it had two short taxable years during 1999.  The first short taxable year, 1999-1, ended June 4, 1999.  The second short taxable year, 1999-2, ended December 25, 1999.  Wilmington filed a separate Federal partnership return (partnership return) for each short taxable year.

The June 4 restructuring transactions included one partner in Wilmington (Bobcat Partners L.P.) selling its partnership interest and ceasing to be a partner. In addition, Wilmington transferred the assets of an operating business to BLIHC to retire a portion of BLIHC's partnership interest in Wilmington. Wilmington reported the 1993 Reset Note had a $550 million value as of the beginning and the end of 1999-1.

BLIHC sold a portion of its remaining partnership interest in Wilmington in 1999-2. Wilmington exchanged the 1993 Reset Note for two replacement notes with a collective $550 million face amount. Wilmington transferred one replacement note and cash to Charles River Partners L.P. in complete liquidation of its interest in Wilmington, and Wilmington made a section 754 election as to the transaction. Later in 1999-2, Wilmington sold one of its active businesses and allocated portions of the sales price to goodwill and to other intangibles. Wilmington reported the 1993 Reset Note had a $550 million value as of the beginning of 1999-2. Wilmington also reported the values of the replacement notes as of the applicable dates.

V.  1999 FPAA

The 1999 FPAA determined that the value of the 1993 Reset Note was zero for each year and adjusted the 1993 Reset Note's basis accordingly. The FPAA made no other adjustment for 1999-1. The FPAA made three other adjustments for 1999-2. The 1999-2

adjustments reflected respondent's determination that Wilmington had lower than reported bases in certain property subject to Wilmington's section 754 election that Wilmington sold during 1999-2.  Respondent in the FPAA also determined accuracy-related penalties under section 6662.

## VI.  Wilmington's Petition to the Court

Wilmington's petition to the Court challenged each of respondent's adjustments in the 1999 FPAA, including the accuracy-related penalties.  Wilmington's mailing address and principal place of business were in Rochester, New York, when it filed the petition.

## Discussion

## I.  Overview

Petitioner moves to dismiss this case for lack of jurisdiction.  Petitioner makes two arguments, the second of which relates solely to 1999-1 as an alternative to the first argument.  We discuss each argument in turn.  We first discuss, however, the general rules of this Court's jurisdiction over a TEFRA proceeding.

## II.  Jurisdiction of the Court

We begin our analysis with a discussion of the Court's jurisdiction over a TEFRA proceeding.  The Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent provided by Congress.  See sec. 7442; GAF Corp. &

Subs. v. Commissioner, 114 T.C. 519, 521 (2000). The Court's jurisdiction includes the right to decide whether the Court has jurisdiction over the subject matter of a case. See Brookes v. Commissioner, 108 T.C. 1, 4 (1997); Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1002 (1978). The Court's jurisdiction is fundamental and may be challenged at any time. See Stewart v. Commissioner, 127 T.C. 109, 112 (2006).

Section 6226(f) sets the scope of the Court's jurisdiction in a TEFRA partnership-level proceeding. The Court has authority to determine all partnership items for a partnership taxable year to which the FPAA relates, the proper allocation of partnership items among the partnership's partners, and the application of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item. See id. A partnership item includes any item of income, gain, loss, deduction, or credit that subtitle A requires the partnership to take into account for the taxable year, to the extent that regulations provide that the item is more appropriately determined at the partnership level than at the partner level.[3] See sec. 6231(a)(3); see also sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs. The Court's jurisdiction over a TEFRA partnership-level

---

[3]A partnership's basis in contributed property (including any necessary preliminary determination) is an example of a partnership item that must be addressed at the partnership level. See Nussdorf v. Commissioner, 129 T.C. 30 (2007); see also sec. 301.6231(a)(3)-1(a)(4)(i), (c)(2)(iv), Proced. & Admin. Regs.

proceeding is invoked upon the Commissioner's issuance of a valid FPAA and the proper filing of a petition for readjustment of partnership items for the year or years to which the FPAA pertains.  See Harbor Cove Marina Partners Pship. v. Commissioner, 123 T.C. 64, 78 (2004).  An FPAA need not contain a partnership item adjustment to be valid.  See id.; see also Univ. Heights at Hamilton Corp. v. Commissioner, 97 T.C. 278, 282 (1991).

III.  Petitioner's Primary Argument

Petitioner argues that the Court lacks jurisdiction as to both years because respondent had to, but did not, adjust Wilmington's initial basis in the 1993 Reset Note in an FPAA for 1993.  Petitioner asserts that Wilmington's initial basis in the 1993 Reset Note is a partnership item only for 1993 and that the 1999 FPAA does not allow the Court to consider events outside the subject years to adjust items for the subject years.  Petitioner contends that events occurring in a year (here 1993) may be considered only if an FPAA is issued for that year.  Petitioner also contends that a partnership item is deemed to be reported correctly for all years if it is not timely adjusted in an FPAA related to the year in which the item is reported.

We conclude that the Court's jurisdiction over the subject years does not rest on whether respondent issued an FPAA for 1993.  The 1999 FPAA reflects respondent's determination that

Wilmington incorrectly reported its basis in the 1993 Reset Note on its partnership returns for 1999-1 and 1999-2. The 1999 FPAA adjusts Wilmington's reported basis for each year. The 1999 FPAA does not purport to adjust Wilmington's partnership return for 1993.

We read nothing in TEFRA that prohibits us from considering events in a nondocketed (or closed) year (here 1993) to make proper adjustments for a docketed year (here 1999-1 or 1999-2). The 1999 FPAA reflects respondent's determination that the facts and circumstances underlying the 1993 Reset Note's contribution to Wilmington in 1993 establish that the initial basis of the 1993 Reset Note was zero and that the basis remained at zero throughout each subject year. The Court must decide the correctness of that determination, given the parties' dispute of it. We do not read the TEFRA provisions narrowly to preclude the Court from considering the events in 1993 to decide the dispute for the subject years.

Nor do we read the TEFRA provisions to provide that the initial basis of the 1993 Reset Note was a partnership item only at the time of the note's contribution. The initial basis of the 1993 Reset Note, while it may have been a partnership item in 1993, was a partnership item in each subject year. Petitioner focuses on a statement in the 1999 FPAA that the 1993 Reset Note "had a basis of zero at the time of its contribution" (emphasis

added) and concludes this means that respondent adjusted Wilmington's basis in the 1993 Reset Note for 1993. We read the language in the 1999 FPAA differently. The 1999 FPAA did not adjust the basis of the 1993 Reset Note for 1993. The 1999 FPAA considered the events in 1993 to make an adjustment for the subject years. Respondent was not required to adjust Wilmington's basis in the 1993 Reset Note in an FPAA that relates to 1993. The parties have not identified, nor are we aware of, anything that happened in 1993 that would have caused respondent to adjust the 1993 Reset Note's initial basis in an FPAA that could lead to an assessment of any tax for 1993. A reporting of basis may typically lead to an adjustment only when something else happens that implicates that basis. Here, for example, that something else occurred during the subject years.[4]

Petitioner asserts that section 6228(a)(5) authorizes the Court to look to nondocketed (or closed) years to make adjustments in a docketed year. Petitioner concludes that the

_____

[4]The parties discuss respondent's right to issue an FPAA for 1993 at any time (and his preclusion from assessing tax for 1993 after the limitations period). See Kligfeld Holdings v. Commissioner, 128 T.C. 192, 203-207 (2007); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 534 (2000). We do not understand that right to mean that respondent must issue an FPAA for 1993 as a prerequisite to our consideration of relevant events occurring in 1993. Such is especially so given our conclusion that nothing happened in 1993 that would have caused respondent to adjust the 1993 Reset Note's initial basis in an FPAA that could lead to an assessment of any tax for 1993.

inclusion of such a provision in section 6228(a)(5), but not in section 6226(f), means that Congress intentionally declined to include a similar provision in the latter section.  We disagree.

A tax matters partner is allowed to file a request for an administrative adjustment (AAR) on behalf of a partnership, and the Commissioner may or may not allow that request.  See sec. 6227(a), (c), (d); see also sec. 6231(a)(7) (providing rules on who is a "tax matters partner").  The tax matters partner is entitled to petition this Court, the appropriate U.S. District Court, or the U.S. Court of Federal Claims to adjust the partnership items related to the AAR if the Commissioner does not allow the AAR in full.  See sec. 6228(a).  Section 6228(a)(5) empowers the court in which the petition is filed to decide the requested partnership items that were not allowed by the Commissioner.  Section 6228(a)(5) also empowers that court to decide any additional items that the Commissioner asserts offset the items requested by the tax matters partner.  We read nothing in section 6228(a)(5) that provides more specifically than section 6226(f) that the referenced court may or may not consider adjustments in a nondocketed (or closed) year to make an adjustment in a docketed year.  Nor do we draw such an inference from our comparison of section 6228(a)(5) to section 6226(f).

We are not unmindful of section 6214(b).  That section provides that the Court in an income or gift tax deficiency case

shall consider facts occurring in a nondocketed year insofar as necessary to determine the amount of the deficiency for a docketed year.  TEFRA includes no corresponding provision.  The U.S. Court of Federal Claims in J & J Fernandez Ventures, L.P. v. United States, 84 Fed. Cl. 369 (2007), considered whether the absence of such a corresponding provision in TEFRA meant that Congress intended that a court in a TEFRA partnership-level proceeding not consider facts from nondocketed (or closed) years.  There, events in 1999 established the tax basis of stock the taxpayers sold in 2000 through 2003.  The Government argued that the taxpayers artificially inflated the tax basis of the stock through the 1999 events.  The taxpayers argued that the Commissioner was time-barred from recalculating or considering partnership items reported on the 1999 partnership returns in assessing tax for 2000 through 2003.  The court disagreed.  The court noted that a basis adjustment alone cannot trigger an assessment of tax for the year of the adjustment.  The court noted further that the law was well settled that courts in a nonpartnership proceeding may adjust items (including basis) in a nondocketed (or closed) year to assess tax in a docketed year. The court held that the settled law applied just as strongly in a TEFRA proceeding.  We agree.  Accord G-5 Inv. Pship. v. Commissioner, 128 T.C. 186, 191-192 (2007).  Nothing in TEFRA or in its legislative history precludes us in TEFRA proceedings from

considering events in a nondocketed (or closed) year to make proper adjustments in a docketed year.

Nor do we read <u>Roberts v. Commissioner</u>, 94 T.C. 853 (1990), and its progeny to establish that a partnership item as reported on a partnership return is deemed to be correctly reported for all years if the item is not adjusted within the limitations period for that return. Such an unchallenged item may be deemed binding for the year of reporting because the applicable limitations period has expired as to the return. We recently noted as much in <u>Meruelo v. Commissioner</u>, 132 T.C. ___, ___ n.7 (2009) (slip op. at 17) (citing <u>Roberts v. Commissioner</u>, <u>supra</u> at 862). It does not naturally follow, however, that the item is deemed correct or binding for all years.

We conclude that respondent's issuance of an FPAA for Wilmington's 1993 taxable year is not a prerequisite for adjusting Wilmington's basis in the 1993 Reset Note to assess tax for each subject year.[5] Events in that nondocketed (or closed) year may be considered to make proper adjustments in the docketed years. Thus the 1999 FPAA is valid despite petitioner's primary argument.[6]

---

[5]In the absence of a valid FPAA for 1993, however, no partnership item may be adjusted to assess tax for that year. See <u>Maxwell v. Commissioner</u>, 87 T.C. 783, 788-789 (1986).

[6]Two other matters deserve mention. The first matter concerns whether respondent's issuance of the "No Adjustments

(continued...)

IV.  Petitioner's Alternative Argument

We turn to petitioner's alternative argument.  Petitioner argues that the Court lacks jurisdiction over 1999-1 because the 1999 FPAA did not adjust a partnership item that Wilmington was required by subtitle A to take into account for that taxable year.  Petitioner asserts that respondent made no adjustment to Wilmington's income, gain, loss, or credit for 1999-1. Petitioner asserts that Wilmington was not required to take the 1993 Reset Note's basis into account for 1999-1.

We conclude that the Court's jurisdiction over 1999-1 does not rest on whether the 1999 FPAA includes a partnership item adjustment.[7]  We previously held as much in Harbor Cove Marina Partners Pship. v. Commissioner, 123 T.C. 64 (2004).  There, a partner brought a TEFRA partnership-level proceeding to challenge

_____

[6](...continued)
Letter" for 1993 precludes respondent from determining in the 1999 FPAA that Wilmington's basis in the 1993 Reset Note was different from that reported for 1993.  The second matter concerns whether respondent is precluded from advancing certain arguments that are inconsistent with respondent's litigating position in other cases.  We discuss neither matter in detail because the matters do not relate to our jurisdiction over the years.  They are instead affirmative defenses to respondent's adjustments for those years.  See Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562, 564-565 (1989); see also Ginsburg v. Commissioner, 127 T.C. 75, 89 (2006) (holding that the Court had jurisdiction over the year in question but that the limitations period precluded the Commissioner from assessing any tax as to that year).

[7]Petitioner apparently agrees with this conclusion. Petitioner's moving papers state specifically that judicial review may be sought of an FPAA that proposes no adjustment.

an FPAA for 1998 that contained no changes to the partnership's return for that year.  The Court noted that the FPAA determined that the partnership return for 1998 was correct as filed.  The Court held that we had jurisdiction because the Commissioner issued the FPAA and the partner filed a timely petition to readjust partnership items for 1998.  The Court stressed that the Court had jurisdiction even though the FPAA contained no adjustment by the Commissioner.  Id. at 78.  We conclude likewise that the Court has jurisdiction over 1999-1, and we hold that the 1999 FPAA is valid despite petitioner's alternative argument.[8]

_____

[8]We would still have jurisdiction over 1999-1 even if the 1999 FPAA had to include a partnership item adjustment.  The 1993 Reset Note's basis in 1999-1 was such an adjustment in that Wilmington had to account for its basis in the note for purposes of its books and records, or for purposes of furnishing information to a partner.  As the Court explained in Bausch & Lomb Inc. v. Commissioner, T.C. Memo. 2009-112, a partner-level proceeding with the same setting as here:

> Partnership items are defined to include a partner's basis in contributed property when a partnership must account for the partnership's basis in the contributed property for purposes of its books and records, or for purposes of furnishing information to a partner.  Sec. 301.6231(a)(3)-1(c)(2), Proced. & Admin. Regs; see also Nussdorf v. Commissioner, * * * [129 T.C.] at 44.  Accordingly, the necessary facts are available only at the partnership level to determine whether the partnership was required to make a determination with respect to BLIHC's basis in the 1993 Reset Note for these purposes.  [Fn. ref. omitted.]

V.  <u>Conclusions</u>

The 1999 FPAA is valid, and the Court has jurisdiction over each subject year.  Any assessment as to 1999-2 is time-barred as set forth in our unpublished order.  We await direction from the parties regarding how to proceed as to 1999-1.

We have considered all arguments made, and we have rejected those arguments as without merit to the extent not discussed above.  Accordingly, to reflect the foregoing,

<u>An appropriate order will</u>

<u>be issued</u>.

APPENDIX

Exhibit A – Explanation of Items
Wilmington Partners L.P. EIN: * * *
Final Partnership Administrative Adjustment Letter
Tax Years Ending: June 4, 1999; December 25, 1999

A.    **Basis in Reset Note contributed by B&L International Holdings Corp.:**  It is determined that the note contributed by Bausch & Lomb International Holdings Corporation to Wilmington Partners L.P. on or about December 23, 1993 in the amount of $550,000,000 had a basis of zero at the time of its contribution.  Further, it has not been established that the distribution of this note from Bausch & Lomb International, Inc. to Bausch & Lomb International Holdings Corporation had economic substance and was accomplished for reasons other than the creation of tax benefits.  Further, it has not been established that the note was evidence of an actual corporate distribution under IRC section 301.  Accordingly, the note contributed by Bausch & Lomb International Holdings Corporation has no basis for the tax years ended June 4, 1999 and December 25, 1999.

B.    **Section 734 adjustment:**  For the taxable year ended December 25, 1999, it is determined that Wilmington Partners L.P. has failed to establish the character or adjusted bases of the assets distributed by them [sic] to Charles River Partners L.P.  Wilmington Partners L.P. has likewise failed to establish that there was any increase to the basis of any partnership property pursuant to I.R.C. §§ 754 and 734(b).  Furthermore, it has been determined that there was a decrease to the basis of certain partnership property pursuant to I.R.C. §§ 754 and 734(b).  It is consequently determined that Wilmington Partners L.P. has not established a basis in certain partnership property in an amount greater than $zero ($0).

1. It is determined that the basis of Charles River Division 1245 Assets was $zero ($0) for purposes of determining gain or loss from the sale of such assets. Accordingly, the ordinary income from the sale of Charles River Division 1245 Assets reported by Wilmington Partners L.P. for the taxable year ended December 25, 1999 is increased by $9,386,279.

2. It is determined that the basis of patents/intangibles was $zero ($0) for purposes of determining gain or loss from the sale of such assets. Accordingly, the ordinary income from the sale of patents/intangibles reported by Wilmington Partners L.P. for the taxable year ended December 25, 1999 is increased by $663,316.

3. It is determined that the basis of the goodwill in CR Division of WPLP is $zero ($0) for purposes of determining gain or loss from the sale of such asset. Accordingly, the long-term capital gain from the sale of the goodwill in CR Division of WPLP reported by Wilmington Partners L.P. for the taxable year ended December 25, 1999 is increased by $189,882,108.

**C.   Penalties (apply to all adjustments):**

1. It is determined that a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by I.R.C. §§ 6662(a), 6662(b)(3), 6662(e), and 6662(h). There has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the

partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply.

2.  Alternatively, it is determined that a penalty applies pursuant to I.R.C. § 6662 to all of the partnership adjustments on the following grounds: (1) negligence or disregard of the rules and regulations, (2) substantial understatement of income tax, and (3) substantial valuation misstatement.  There has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply.