WILKINSON, Circuit Judge,
concurring:
I am happy to concur in Judge Wynn’s fine opinion in this case. The Chevron test is straightforward enough when it comes to post-Chevron cases. But it is sometimes difficult to determine whether preChevron decisions are based upon “Chevron step one” (the plain command of the statute) or upon “Chevron step two” (a permissible construction of the statute). Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. -, -, 131 S.Ct. 704, 711, 178 L.Ed.2d 588 (2011). Certainly Justice Harlan in Colony, Inc. v. Commissioner, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119 (1958), had no occasion to ponder the permutations of the Chevron test, which came down in 1984.
Here, however, I am persuaded that the Supreme Court rested its judgment in Colony on the plain language of the statute, which then, as now, stated that the extended statute of limitations for assessing tax liability applies “[i]f the taxpayer omits from gross income an amount properly includible therein.” 26 U.S.C. § 275(c) (1939) (emphasis added); see 26 U.S.C. § 6501(e)(1)(A) (current version). In other words, I believe that Colony was decided under Chevron step one.
Lawyers of course are adept at finding ambiguity, and language of course is by its nature imprecise. One need not consult a dictionary, however, to understand that the plain meaning of “omit” is “to leave out” or “to fail to mention.” The taxpayers here did not omit, leave out, or fail to mention their transaction. Instead, they provided the details on their returns. See Majority Op. at 252. To be sure, the IRS asserts that the returns overstated Home Concrete’s basis and thus understated the overall tax liability resulting from the sale of its assets. But as the Court noted in Colony, if Congress had been concerned with that problem, “it could have chosen another verb such as ‘reduces’ or ‘understates,’ either of which would have pointed significantly in the Commissioner’s di *259 rection.” Colony, 357 U.S. at 32, 78 S.Ct. 1033.
I recognize there is some language in Colony suggesting that the Court looked at legislative history or thought that § 275(c) was ambiguous. See Colony, 357 U.S. at 33, 78 S.Ct. 1033 (“Although we are inclined to think that the statute on its face lends itself more plausibly to the taxpayer’s interpretation, it cannot be said that the language is unambiguous. In these circumstances we turn to the legislative history of § 275(c).”). But that language seems to me secondary in importance to the thrust of the opinion and to the Court’s argument that “in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner [additional time] to investigate tax returns in cases where, because of a taxpayer’s omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors.” Id. at 36, 78 S.Ct. 1033. More importantly, as Judge Wynn notes, the Court observed that its decision was “in harmony with the unambiguous language of’ 26 U.S.C. § 6501(e)(1)(A), the successor provision to § 275(c) and the provision at issue here. See id. at 37, 78 S.Ct. 1033 (emphasis added).
I appreciate that Chevron and National Cable & Telecommunications Ass’n v. Brand X Internet Services, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005), afford agencies considerable discretion in their areas of expertise. As Brand X put it, “Chevron established a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, ... desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.” Brand X, 545 U.S. at 982, 125 S.Ct. 2688 (internal quotations and citation omitted). The Supreme Court’s recent decision in Mayo Foundation likewise affords full Chevron deference to Treasury Regulations, concluding that the Treasury Department’s interpretations of ambiguous statutes will stand if they are “a ‘reasonable interpretation’ of the enacted text.” Mayo Found., 562 U.S. at -, 131 S.Ct. at 714 (quoting Chevron, 467 U.S. at 844, 104 S.Ct. 2778). Given the fact that government today is an enterprise of unprecedented complexity, this makes perfect sense. Nor do judges harbor any desire to impair the mission of the IRS in a day of staggering budget deficits.
Yet it remains the case that agencies are not a law unto themselves. No less than any other organ of government, they operate in a system in which the last words in law belong to Congress and the Supreme Court. What the IRS seeks to do in extending the statutory limitations period goes against what I believe are the plain instructions of Congress, which have not been changed, and the plain words of the Court, which have not been retracted. See Colony, 357 U.S. at 37, 78 S.Ct. 1033.
This seems to me something of an inversion of the universe and to pass the point where the beneficial application of agency expertise gives way to a lack of accountability and a risk of arbitrariness. We do not stand alone in reaching this determination; other courts have similarly rebuffed the IRS’s repeated attempts to adopt the six-year statute of limitations for omissions of gross income so as to cover misleading statements in tax returns that would result in tax deficiencies. See Salman Ranch Ltd. v. United States, 573 F.3d 1362, 1372-74 (Fed.Cir.2009); Bakersfield Energy Partners, L.P. v. Comm’r, 568 F.3d 767, 778 (9th Cir.2009); Grapevine Imports, Ltd. v. United States, 77 Fed.Cl. 505, 511-12 (2007); Intermountain Ins. Serv. of Vail, LLC v. Comm’r, 134 T.C. No. 11, 2010 WL 1838297, at *6-8 (2010). These courts have recognized that regardless of *260 whether the IRS’s position is sound as a matter of policy, it is simply not the law.
We have been told many times to leave to the Court “the prerogative of overruling its own decisions.” See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). If that injunction has been issued to the circuit courts, it assuredly applies to agencies in situations where the Court has interpreted the plain language of a statutory command. Maybe Congress will conclude at some point that the six-year period should apply to declarations that fall short of omissions or the Court may decide that Colony was somehow, after all, a Chevron step two case. But those decisions are neither ours nor the agency’s to make. Chevron, Brand X, and more recently, Mayo Foundation rightly leave agencies with a large and beneficial role, but they do not leave courts with no role where the very language of the law is palpably at stake. There is a balance to be struck here, and courts still must play a part in determining where “here” is. The disruption of that balance in this case seems clear and evident.