**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HOME CONCRETE & SUPPLY, LLC;
ROBERT L. PIERCE; STEPHEN R.
CHANDLER; REBECCA R. CHANDLER;
HOME OIL AND COAL COMPANY,
INCORPORATED; SUSANNE D. PIERCE,

     *Plaintiffs-Appellants,*

       v.

UNITED STATES OF AMERICA,

     *Defendant-Appellee.*

No. 09-2353

BAUSCH & LOMB, INC.,

     *Amicus Supporting Appellants.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(7:06-cv-00181-FL)

Argued: October 27, 2010

Decided: February 7, 2011

Before WILKINSON, GREGORY, and WYNN,
Circuit Judges.

Reversed by published opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Gregory joined. Judge Wilkinson wrote a separate concurring opinion.

## COUNSEL

**ARGUED:** Richard Rice, Charles Mark Wiley, WOMBLE CARLYLE SANDRIDGE & RICE, PLLC, Winston-Salem, North Carolina, for Appellants. Joan Iris Oppenheimer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF**: Robert T. Numbers, II, WOMBLE CARLYLE SANDRIDGE & RICE, PLLC, Winston-Salem, North Carolina, for Appellants. John A. DiCicco, Acting Assistant Attorney General, Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General, Michael J. Haungs, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; George E. B. Holding, United States Attorney, Raleigh, North Carolina, for Appellee. Roger J. Jones, Andrew R. Roberson, LATHAM & WATKINS LLP, Chicago, Illinois; Kim Marie Boylan, LATHAM & WATKINS, LLP, Washington, D.C., for Amicus Supporting Appellants.

---

## OPINION

WYNN, Circuit Judge:

In *Colony, Inc. v. Commissioner of Internal Revenue*, the United States Supreme Court held that an overstatement of basis in assets resulting in an understatement of reported gross income does not constitute an "omission" from gross income for purposes of extending the general three-year statute of limitations for tax assessments. 357 U.S. 28 (1958). Because *Colony* squarely applies to this case, and because we will not defer to Treasury Regulation § 301.6501(e)-1(e), which was promulgated during this litigation and, by its own terms, does not apply to the tax year at issue, we reverse and hold that the tax assessments at issue here were untimely.

### I.

In 1999, plaintiffs Stephen R. Chandler and Robert L. Pierce were the sole shareholders of plaintiff Home Oil and

Coal Company, Incorporated ("Home Oil"). Mr. Pierce contemplated selling his interest in Home Oil and sought professional financial planning advice in anticipation of the transaction. This financial advice, rendered by several financial planning firms, included proposals to minimize the tax liability generated by Mr. Pierce's sale of his interest in Home Oil. The ensuing transactions form the grounds of this dispute.

Plaintiff Home Concrete & Supply, LLC ("Home Concrete"), a pass-through entity for tax purposes, was formed on April 15, 1999. Its partners were Mr. Chandler, Mr. Pierce, Home Oil, and two trusts established for the benefit of Mr. Pierce's children (collectively "the taxpayers").

On May 13, 1999, each of the taxpayers initiated short sales[1] of United States Treasury Bonds. In the aggregate, the taxpayers received $7,472,405 in short sale proceeds. Four days later, the taxpayers transferred the short sale proceeds and margin cash to Home Concrete as capital contributions. By transferring the short sale proceeds to Home Concrete as capital contributions, the taxpayers created "outside basis" equal to the amount of the proceeds contributed.[2] The next day, May 18, 1999, Home Concrete closed the short sales by purchasing and returning essentially identical Treasury Bonds on the open market at an aggregate purchase price of $7,359,043.

---

[1]A "short sale" is a "sale of a security that the seller does not own or has not contracted for at the time of sale, and that the seller must borrow to make delivery." Black's Law Dictionary 1456 (9th ed. 2009). To close the short sale, "'[t]he short seller is obligated . . . to buy an equivalent number of shares [or substantially identical security] in order to return the borrowed [property]. In theory, the short seller makes this covering purchase using the funds he received from selling the borrowed [property].'" *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 450 (5th Cir. 2008) (quoting *Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 820 (3d Cir. 1988)).

[2]A partner's basis in her partnership interest is called "outside basis," and a partnership's basis in its assets is referred to as its "inside basis." *Kornman*, 527 F.3d at 456 n.12; *see also* 26 U.S.C. §§ 722-23.

On June 11, 1999, Home Oil transferred substantially all of its business assets to Home Concrete as a capital contribution. Three days later, the taxpayers (except Home Oil) transferred percentages of their respective partnership interests in Home Concrete to Home Oil as capital contributions to Home Oil. On August 31, 1999, Home Concrete sold substantially all of its assets to a third-party purchaser for $10,623,348.

In April 2000, Home Concrete and the taxpayers timely filed their tax returns for the 1999 tax year. Home Concrete elected to adjust, or "step-up," its inside basis under 26 U.S.C. ("I.R.C.") § 754 to equal the taxpayers' outside bases. *See* I.R.C. § 743(b)(1). Home Concrete then adjusted its inside basis to $10,527,350.53, including the amount of short sale proceeds earlier contributed by the taxpayers. As a result, Home Concrete reported a modest $69,125.08 gain from the sale of its assets.

Home Concrete's 1999 tax return reported the basic components of the transactions. Its § 754 election form gave, for each partnership asset, an itemized accounting of the partnership's inside basis, the amount of the basis adjustment, and the post-election basis. The sum of the post-election bases is indicated at the end of the form. On its face, Home Concrete's return also showed a "Sale of U.S. Treasury Bonds" acquired on May 18, 1999 at a cost of $7,359,043, and a sale of those Bonds on May 19, 1999 for $7,472,405. The return also reported the resulting gain of $113,362. Similarly, the taxpayers' individual returns showed that "during the year the proceeds of a short sale not closed by the taxpayer in this tax year were received."

Notwithstanding these disclosures, the Internal Revenue Service ("IRS") did not investigate the taxpayers' transactions until June 2003. The IRS issued a summons to Jenkins & Gilchrist, P.C., the law firm that assisted the taxpayers with the transactions, on June 19, 2003. The parties agree that substan-

tial compliance with the IRS summons did not occur until at least May 17, 2004.

As a result of the investigation, on September 7, 2006 the IRS issued a Final Partnership Administrative Adjustment ("FPAA"), decreasing to zero the taxpayers' reported outside bases in Home Concrete and thereby substantially increasing the taxpayers' taxable income. Specifically, the IRS reasoned that

> the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners. . . . [T]he acquisition of any interest in the purported partnership by the purported partner, short sales of Treasury Notes, the transfer of proceeds from short sales of Treasury Notes or other assets to a partnership in return for a partnership interest, the purchase or disposition of assets by the partnership, and the distribution of those assets or proceeds from the disposition of those assets to the purported partners, and the subsequent sale of those assets to generate a loss, all within a period of 8 months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the partnership and the transactions described above shall be disregarded in full and (1) any purported losses resulting from these transactions are not allowable as deductions; and (2) increases in basis of assets are not allowed to eliminate gain for federal income tax purposes.

Accordingly, Home Concrete deposited $1,392,118 with the IRS and sued in the District Court for the Eastern District of North Carolina to recover that amount, alleging that the

FPAA was barred by the general three-year limitations period in I.R.C. § 6501(a).

In response, the IRS contended that the FPAA was timely under the six-year limitations period in § 6501(e)(1)(A). The IRS invoked the extended statute of limitations arguing that Home Concrete "omit[ted] from gross income an amount properly includable therein" and which exceeded 25% of the amount of gross income stated in Home Concrete's 1999 tax return. *Home Concrete & Supply, LLC v. United States*, 599 F. Supp. 2d 678, 683 (E.D.N.C. 2008). There was no dispute that if an amount had been omitted from Home Concrete's return, that amount exceeded the 25% threshold. Likewise, there was no dispute that the FPAA would have been timely under the six-year statute of limitations, which would have been tolled beginning six months after the date the summons issued to the date of compliance. *Id.* at 681 n.5; *see also* I.R.C. § 7609(e)(2). By the district court's calculation, "the limitations period for the 1999 tax returns was suspended from December 20, 2003, until May 17, 2004 . . . . Thus, a six-year statute, tolled, would not have run even under this most restrictive interpretation of the record until" September 14, 2006. *Home Concrete & Supply*, 599 F. Supp. 2d at 681 n.5.

On the other hand, the taxpayers argued that the six-year statute of limitations was inapplicable because Home Concrete's allegedly overstated basis did not constitute an omission from gross income. And even if it had been an omission, the taxpayers argued, their tax returns collectively made adequate disclosure of the transactions such that they were entitled to the safe harbor of the three-year statute of limitations under § 6501(e)(1)(B)(ii) (hereafter "safe harbor provision"). *Id.* at 683.

Thereafter, the district court granted partial summary judgment in the IRS's favor, ruling that "where a taxpayer overstates basis and, as a result, leaves an amount out of gross

income, the taxpayer 'omits from gross income an amount properly includible therein' for purposes of § 6501(e)(1)(A)." *Id.* at 687. The court ordered further briefing on, among other issues, whether the taxpayers adequately disclosed any omitted amount such that the safe harbor provision applied. After considering the supplemental briefs,**[3]** the district court ruled that the taxpayers failed to make adequate disclosure and therefore could not invoke the safe harbor provision. Accordingly, the district court concluded that the FPAA was timely under the six-year statute of limitations in § 6501(e)(1)(A). Home Concrete and the taxpayers appealed.

## II.

On appeal, Home Concrete and the taxpayers argue that *Colony* establishes that an overstated tax basis does not constitute an omission from gross income for purposes of extending the limitations period for assessments. We review this question of law de novo. *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 286 (4th Cir. 2004)

In *Colony,* the IRS alleged that a taxpayer "understated the gross profits on the sales of certain lots of land for residential purposes as a result of having overstated the 'basis' of such lots by erroneously including in their cost certain unallowable items of development expense." 357 U.S. at 30. The IRS further contended that the amount left out of gross income because of the overstated basis exceeded 25% of the amount of gross income stated in the relevant tax returns. The IRS argued that its assessments were therefore timely under the extended five-year statute of limitations in former I.R.C. § 275(c). *Id.* at 30-31. That section stated that:

---

**[3]**In their supplemental brief to the district court, the taxpayers stipulated "for purposes of resolving the [cross-motions for summary judgment] only, that 'they overstated the tax basis of the assets that [Home Concrete] sold in 1999 resulting in an omission [ ] from gross income in excess of 25 percent of the stated gross income amount.'"

> If the taxpayer omits from gross income an amount properly includable therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

26 U.S.C. § 275(c) (1939).

The Supreme Court in *Colony* acknowledged that former § 275(c) was ambiguous and did not clearly answer whether Congress intended an overstated basis to constitute an omission from gross income stated in the return. The Court found in the legislative history "persuasive evidence that Congress was addressing itself to the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." *Id.* at 33. According to the Court, "in enacting [former §] 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors." *Id.* at 37. The Court therefore refused to construe "omits" broadly and instead restricted its applicability to situations where taxpayers actually fail to report income.

Notably, in dicta, the Supreme Court also stated that its conclusion was "in harmony with the *unambiguous* language of section 6501(e)(1)(A)"—the section at issue in this case. *Id.* (emphasis added). In 1954, Congress recodified former § 275(c) at § 6501(e)(1)(A). Congress extended the limitations period from five years to six, and added the following additional subsections:

> (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or

accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.

Section 6501(e)(1)(A) and former § 275(c) are otherwise essentially identical.

In this case, the district court distinguished *Colony* on the ground that its holding is limited to cases in which the taxpayer is a trade or business selling goods or services. *Home Concrete & Supply*, 599 F. Supp. 2d at 685-86; *accord, e.g., Beard v. Comm'r*, No. 09-3741, slip op. at 8-9 (7th Cir. Jan. 26, 2011) (holding that *Colony* only applies in the trade or business context); *CC&F W. Operations Ltd. P'ship v. Comm'r*, 273 F.3d 402, 406 n.2 (1st Cir. 2001) (noting, in dicta, the "arguable implication" that the holding of *Colony* applies only to sales of goods or services by a trade or business). In doing so, the district court relied heavily upon the Court of Federal Claims' decision in *Salman Ranch, Ltd. v. United States*, 79 Fed. Cl. 189 (2007), which has since been reversed by the Federal Circuit. 573 F.3d 1362 (Fed. Cir. 2009). The Federal Circuit expressly refused to limit *Colony's* application to sales of goods or services by a trade or business because nothing in *Colony* suggests such a limitation. *Salman Ranch*, 573 F.3d at 1373; *see also Bakersfield Energy Partners, L.P. v. Comm'r*, 568 F.3d 767, 778 (9th Cir. 2009) ("There is no ground for suggesting that the [*Colony*] Court intended the same language in § 275(c) to apply differently to taxpayers in a trade or business than to other taxpayers.");

*Grapevine Imports, Ltd. v. United States*, 77 Fed. Cl. 505, 511 (2007) ("[T]his court sees no basis for limiting the Supreme Court's decision [in *Colony*] to sales of goods or services by a trade or business."); *UTAM, Ltd. v. Comm'r*, 98 T.C.M. (CCH) 422, *3 (2009) (same).

Like the Ninth and Federal Circuits, we hold that the Supreme Court in *Colony* straightforwardly construed the phrase "omits from gross income," unhinged from any dependency on the taxpayer's identity as a trade or business selling goods or services. There is, therefore, no ground to conclude that the holding in *Colony* is limited to cases involving a trade or business selling goods or services. *See Salman Ranch*, 573 F.3d at 1373 ("We are not prepared to conclude—based simply upon the Court's reference to ambiguity in § 275(c) and the lack thereof in § 6501(e)(1)(A)—that the Court's facially unqualified holding nevertheless carries with it a qualification.").

Further, the Supreme Court's discussion of the legislative history behind former § 275(c) is equally compelling with regard to current § 6501(e)(1)(A). The language the Court construed in former § 275(c)—"omits from gross income an amount properly includable therein"—is identical to the language at issue in § 6501(e)(1)(A). Because there has been no material change between former § 275(c) and current § 6501(e)(1)(A), and no change at all to the most pertinent language, we are not free to construe an omission from gross income as something other than a failure to report "some income receipt or accrual." *Colony*, 357 U.S. at 33; *see also Bakersfield Energy Partners, L.P.*, 568 F.3d at 778 (concluding that *Colony* forecloses the argument that an overstated basis can constitute an omission from gross income for purposes of extending the statute of limitations under § 6501(e)(1)(A)); *Salman Ranch*, 573 F.3d at 1377 (same). Thus, we join the Ninth and Federal Circuits and conclude that *Colony* forecloses the argument that Home Concrete's

overstated basis in its reporting of the short sale proceeds resulted in an omission from its reported gross income.

## III.

The IRS presses another path around *Colony*. After concluding that the IRS's position regarding the meaning of "omits" was barred by *Colony*, the Ninth Circuit commented that the "IRS may have the authority to promulgate a reasonable reinterpretation of an ambiguous provision of the tax code, even if its interpretation runs contrary to the Supreme Court's 'opinion as to the best reading' of the provision." *Bakersfield Energy Partners*, 568 F.3d at 778 (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005)).

Perhaps in response to the Ninth Circuit's cue, the IRS promulgated a temporary regulation on September 28, 2009, which became final during the pendency of this appeal. Treas. Reg. § 301.6501(e)-1. The IRS claims that this regulation is entitled to controlling deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

The regulation states that:

> (iii) For purposes of paragraph (a)(1)(i) of this section, the term *gross income*, as it relates to any income other than from the sale of goods or services in a trade or business, has the same meaning as provided under section 61(a), and includes the total of the amounts received or accrued, to the extent required to be shown on the return. In the case of amounts received or accrued that relate to the disposition of property, and except as provided in paragraph (a)(1)(ii) of this section, *gross income* means the excess of the amount realized from the disposition of the property over the unrecovered cost or

other basis of the property. Consequently, except as provided in paragraph (a)(1)(ii) of this section, an understated amount of gross income resulting from an overstatement of unrecovered cost or other basis constitutes an omission from gross income for purposes of section 6501(e)(1)(A).

. . .

(e) *Effective/applicability date—(1) Income Taxes.* Paragraph (a) of this section applies to taxable years with respect to which the period for assessing tax was open on or after September 24, 2009.

Treas. Reg. § 301.6501(e)-1(a)(1)(iii)-1(e)(1) (2010). The IRS asks us to apply the regulation retroactively to produce the result it desires in this case. We decline to do so for several reasons.

First, the 1999 tax year at issue in this case, for which tax returns were due by April 2000, is well beyond the reach of the regulation's express period of applicability. Even assuming *arguendo* that the six-year statute of limitations applied, pursuant to the regulation, the "period for assessing tax" would have expired, according to the district court's unchallenged finding, on September 14, 2006. Thus, the period for assessing tax for the 1999 tax year expired long before September 24, 2009. By its own terms, the regulation does not apply here.[4]

---

[4]In *UTAM*, the Tax Court noted that the IRS (curiously) did not rely on the temporary regulation, even though it had been promulgated while that case was still pending. 98 T.C.M. (CCH) at *1 n.2. We observe that the timeline in this case is virtually identical to the timeline in *UTAM*: The IRS issued an FPAA on October 13, 2006, alleging that the taxpayer had omitted gross income by overstating basis in its tax return for the 1999 tax year. *Id.* at *1-2. The IRS did not ask the Tax Court to apply the temporary regulation retroactively in *UTAM* yet asks this Court to do so in this factually analogous case.

The IRS urges a different interpretation of the regulation's applicability clause in the preamble to Treasury Decision 9511. The preamble suggests that the "six-year period for assessing tax" in § 6501(e)(1) remains open for "all taxable years . . . that are the subject of any case pending before any court of competent jurisdiction (including the United States Tax Court and Court of Federal Claims) in which a decision had not become final (within the meaning of [26 U.S.C. §] 7481)." Because this case was not finally resolved as of September 24, 2009, the IRS argues that § 6501(e)(1)'s six-year period for assessing tax remains open and Treasury Regulation § 301.6501(e)-1(e) applies. We cannot agree.

With this logic, the IRS attempts to re-draft I.R.C. § 6501. In the statute, Congress made clear that the window for tax assessments, barring special circumstances, closes after three years. I.R.C. § 6501(a). In the event of an omission, the window closes after six years. I.R.C. § 6501(e). And Congress specifically listed circumstances, such as fraud, in which the assessment window remains open without limitation. *Id.* § 6501(c). Congress unambiguously stated its intent to close the period for assessing tax within six years after a return is filed, except in cases of fraud. Accordingly, the IRS's argument that the period for assessing tax is open—or indeed may be re-opened, as would be the case here—so long as litigation is pending is contrary to the clearly and unambiguously expressed intent of Congress and must fail. *United States v. Mead*, 533 U.S. 218, 227 (2001) (stating that an agency's interpretation is not binding on courts if it is "manifestly contrary to the statute"). Not surprisingly, the Tax Court rejected the same argument as to the substantially identical applicability clause in the temporary regulation. *Intermountain Ins. Serv. of Vail, LLC v. Comm'r*, 134 T.C. No. 11, *4-6 (2010) (rejecting the IRS's argument as circular and contrary to the plain language of the regulations).

Second, even putting the applicability clause aside, *Chevron* deference is warranted only when a treasury regulation

interprets an ambiguous statute. *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. ___, ___, No. 09-837, slip op. at 6-7 (Jan. 11, 2011); *see also Brand X Internet Servs.*, 545 U.S. at 980; *Chevron*, 467 U.S. at 842-43. While we are aware that lower courts are divided regarding whether an overstated basis constitutes an omission from gross income, the Supreme Court's reference to "the *unambiguous* language of section 6501(e)(1)(A)" cannot be ignored. *Colony*, 357 U.S. at 37 (emphasis added). Because the regulation here interprets "omits from gross income" under § 6501(e)(1)(A), and the Supreme Court declared that statute unambiguous, we do not believe that the regulation is entitled to controlling deference. *See Chevron*, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Finally, we are not persuaded by the IRS's argument that the regulation should apply retroactively to this case as a clarification of law established in *Colony* and other cases. The Supreme Court has acknowledged that a subsequent agency interpretation of an ambiguous statute may displace an earlier judicial construction of the same provision. *Brand X Internet Servs.*, 545 U.S. at 982-83. But again, the Supreme Court stated in *Colony* that § 6501(e)(1)(A) is unambiguous as to the very issue to which the regulation purports to speak. The regulation is not, therefore, a mere clarification. Rather, if applied, the regulation would change the law governing the taxpayers' 1999 tax returns and thereby subject the taxpayers to liability to which they would not have been subject under pre-regulation law. *See United States v. Capers*, 61 F.3d 1100, 1110 (4th Cir. 1995) (declining to apply an amendment to the United States Sentencing Guidelines retroactively because the amendment changed Fourth Circuit law so as to deprive the defendant of a benefit to which he would have been entitled under pre-amendment law).

Because *Colony* was established law when the taxpayers filed their returns in April 2000, we refuse to apply Treasury

Regulation § 301.6501(e)-1(e), which purports to establish a rule contrary to *Colony* to subject the taxpayers to the extended limitations period ten years later. *See Levy v. Sterling Holding Co.*, 544 F.3d 493, 506 (3d Cir. 2008) ("[W]here a new rule constitutes a clarification—rather than a substantive change—of the law as it existed beforehand, the application of that new rule to pre-promulgation conduct necessarily does *not* have an impermissible retroactive effect"); *cf. Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 744 n.3 (1996) (stating that an agency interpretation does not have an impermissible retroactive effect where there was previously no clear agency guidance).

## IV.

In sum, we conclude that the Supreme Court's holding in *Colony* applies to § 6501(e)(1)(A). An overstated basis in property is not an omission from gross income that extends the limitations period in § 6501(e)(1)(A). Accordingly, Home Concrete's overstated basis in the short sale proceeds did not trigger the six-year statute of limitations. Moreover, Treasury Regulation § 301.6501(e)-1(e), by the plain terms of its applicability clause, does not apply to the tax year at issue in this case and is furthermore not entitled to deference. The general three-year statute of limitations in § 6501(a) applies, making the FPAA here untimely. We reverse the district court's judgment to the contrary.[5]

*REVERSED*

WILKINSON, Circuit Judge, concurring:

I am happy to concur in Judge Wynn's fine opinion in this case. The *Chevron* test is straightforward enough when it comes to post-*Chevron* cases. But it is sometimes difficult to

---

[5]In light of this holding, we need not reach the parties' arguments regarding the safe harbor provision.

determine whether pre-*Chevron* decisions are based upon "*Chevron* step one" (the plain command of the statute) or upon "*Chevron* step two" (a permissible construction of the statute). *Mayo Found. for Med. Educ. & Research v. United States*, No. 09-837, slip op. at 6-7 (U.S. Jan. 11, 2011). Certainly Justice Harlan in *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), had no occasion to ponder the permutations of the *Chevron* test, which came down in 1984.

Here, however, I am persuaded that the Supreme Court rested its judgment in *Colony* on the plain language of the statute, which then, as now, stated that the extended statute of limitations for assessing tax liability applies "[i]f the taxpayer *omits* from gross income an amount properly includible therein." 26 U.S.C. § 275(c) (1939) (emphasis added); *see* 26 U.S.C. § 6501(e)(1)(A) (current version). In other words, I believe that *Colony* was decided under *Chevron* step one.

Lawyers of course are adept at finding ambiguity, and language of course is by its nature imprecise. One need not consult a dictionary, however, to understand that the plain meaning of "omit" is "to leave out" or "to fail to mention." The taxpayers here did not omit, leave out, or fail to mention their transaction. Instead, they provided the details on their returns. *See* Majority Op. at 4. To be sure, the IRS asserts that the returns overstated Home Concrete's basis and thus understated the overall tax liability resulting from the sale of its assets. But as the Court noted in *Colony*, if Congress had been concerned with that problem, "it could have chosen another verb such as 'reduces' or 'understates,' either of which would have pointed significantly in the Commissioner's direction." *Colony*, 357 U.S. at 32.

I recognize there is some language in *Colony* suggesting that the Court looked at legislative history or thought that § 275(c) was ambiguous. *See Colony*, 357 U.S. at 33 ("Although we are inclined to think that the statute on its face lends itself more plausibly to the taxpayer's interpretation, it

cannot be said that the language is unambiguous. In these circumstances we turn to the legislative history of § 275(c)."). But that language seems to me secondary in importance to the thrust of the opinion and to the Court's argument that "in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner [additional time] to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors." *Id.* at 36. More importantly, as Judge Wynn notes, the Court observed that its decision was "in harmony with the *unambiguous* language of" 26 U.S.C. § 6501(e)(1)(A), the successor provision to § 275(c) and the provision at issue here. *See id.* at 37 (emphasis added).

I appreciate that *Chevron* and *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005), afford agencies considerable discretion in their areas of expertise. As *Brand X* put it, "*Chevron* established a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, . . . desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Brand X*, 545 U.S. at 982 (internal quotations and citation omitted). The Supreme Court's recent decision in *Mayo Foundation* likewise affords full *Chevron* deference to Treasury Regulations, concluding that the Treasury Department's interpretations of ambiguous statutes will stand if they are "a 'reasonable interpretation' of the enacted text." *Mayo Found.*, slip op. at 12 (quoting *Chevron*, 467 U.S. at 844). Given the fact that government today is an enterprise of unprecedented complexity, this makes perfect sense. Nor do judges harbor any desire to impair the mission of the IRS in a day of staggering budget deficits.

Yet it remains the case that agencies are not a law unto themselves. No less than any other organ of government, they operate in a system in which the last words in law belong to Congress and the Supreme Court. What the IRS seeks to do in extending the statutory limitations period goes against what

I believe are the plain instructions of Congress, which have not been changed, and the plain words of the Court, which have not been retracted. *See Colony*, 357 U.S. at 37.

This seems to me something of an inversion of the universe and to pass the point where the beneficial application of agency expertise gives way to a lack of accountability and a risk of arbitrariness. We do not stand alone in reaching this determination; other courts have similarly rebuffed the IRS's repeated attempts to adopt the six-year statute of limitations for omissions of gross income so as to cover misleading statements in tax returns that would result in tax deficiencies. *See Salman Ranch Ltd. v. United States*, 573 F.3d 1362, 1372-74 (Fed. Cir. 2009); *Bakersfield Energy Partners, L.P. v. Comm'r*, 568 F.3d 767, 778 (9th Cir. 2009); *Grapevine Imports, Ltd. v. United States*, 77 Fed. Cl. 505, 511-12 (2007); *Intermountain Ins. Serv. of Vail, LLC v. Comm'r*, 134 T.C. No. 11, at *6-*8 (2010). These courts have recognized that regardless of whether the IRS's position is sound as a matter of policy, it is simply not the law.

We have been told many times to leave to the Court "the prerogative of overruling its own decisions." *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). If that injunction has been issued to the circuit courts, it assuredly applies to agencies in situations where the Court has interpreted the plain language of a statutory command. Maybe Congress will conclude at some point that the six-year period should apply to declarations that fall short of omissions or the Court may decide that *Colony* was somehow, after all, a *Chevron* step two case. But those decisions are neither ours nor the agency's to make. *Chevron*, *Brand X*, and more recently, *Mayo Foundation* rightly leave agencies with a large and beneficial role, but they do not leave courts with no role where the very language of the law is palpably at stake. There is a balance to be struck here, and courts still must play a part in determining where "here" is. The disruption of that balance in this case seems clear and evident.