*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0323p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

A & E COAL CO. and OLD REPUBLIC
INSURANCE COMPANY,

*Petitioners,*

*v.*

No. 11-3926

JAMES ADAMS and DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

On Petition for Review of Orders
of the Benefits Review Board.
No. 10-0264 BLA.

Decided and Filed: September 11, 2012

Before: SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners. Stephen A. Sanders, APPALACHAIN CITIZENS' LAW CENTER, INC., Whitesburg, Kentucky, Sean G. Bajkowski, Maia S. Fisher, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

_____

**OPINION**

_____

KETHLEDGE, Circuit Judge. An Administrative Law Judge awarded disability benefits to James Adams, formerly a coal miner for A & E Coal Company. *See generally* Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* The Department of Labor's Benefits Review Board affirmed the ALJ's decision. A & E Coal Company now

_____

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

petitions this court to review the Board's decision, arguing that the ALJ improperly relied on the preamble to certain regulations under the Act. We reject that argument and deny the petition.

I.

James Adams worked in coal mines for seventeen years. He was employed by A & E Coal during his last twelve years as a miner. Adams left A & E Coal in 1988 because he was having difficulty breathing. He has not worked since. Adams also smoked cigarettes for about 25 years, averaging a pack a day before quitting in 1998 or 1999.

Adams filed his first claim for benefits under the Black Lung Benefits Act in 1988. His claim was denied: He did not prove that his pneumoconiosis was caused in part by his coal-mine work, or that his pneumoconiosis totally disabled him. He did not appeal.

In 2007, Adams filed a second claim for benefits under the Act. He was then examined by two pulmonologists: Dr. Donald Rasmussen, a doctor provided by the Department of Labor, and Dr. Thomas Jarboe, a doctor hired by A & E Coal. Both doctors agreed that Adams's chest X-rays showed no measurable coal dust, and that he therefore did not have clinical pneumoconiosis. *See* 20 C.F.R. § 718.201(a)(1) ("Clinical pneumoconiosis . . . [is a] condition characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment"). The doctors also agreed that Adams's lung diseases left him completely disabled, and that he therefore could not return to work in the mines. They disagreed, however, on what lung diseases Adams had, and on what caused them.

Dr. Rasmussen diagnosed Adams with chronic obstructive pulmonary disease (COPD), which includes bronchitis, small-airways disease, and emphysema. According to Dr. Rasmussen, smoking and coal dust both cause the same types of impairments, making it impossible to tell how much of Adams's COPD was caused by smoking versus

coal dust. Based on Adams's history of smoking and coal-mine employment, as well as studies on coal-dust-related diseases, Dr. Rasmussen opined that Adams's COPD was caused by both his smoking and his coal-dust exposure.

Dr. Jarboe diagnosed Adams with emphysema and asthma, but also acknowledged that Adams had COPD. According to Dr. Jarboe, it is possible to distinguish the effects of smoking from those of coal-dust exposure on a coal miner who suffers from COPD. Dr. Jarboe believed, for example, that the results of Adams's residual volume test, which measured the amount of air remaining in Adams's lungs after he exhaled, were too high (*i.e.*, his condition was too severe) to have been caused by coal-dust exposure. Dr. Jarboe also opined that when emphysema is caused by coal-dust exposure there should be at least some indication of coal-dust deposits on the person's X-ray. Because Adams had emphysema and his X-rays were negative for coal dust, Dr. Jarboe concluded that Adams's lung disease was the result of smoking and not his coal-dust exposure.

An Administrative Law Judge held a hearing and issued a decision awarding benefits to Adams. The ALJ found that Adams had pneumoconiosis, that the disease was caused by Adams's exposure to coal dust during his coal-mine employment, and that he was totally disabled because of the disease. In support, the ALJ found that Dr. Rasmussen's testimony was "well-reasoned, because he accounts for all of the medical evidence, his opinions are consistent with the regulations, and he does not irrationally rule out factors in his causation analysis." In contrast, the ALJ found that Dr. Jarboe's opinion was not well-reasoned "because he irrationally rules out Claimant's 17-year mine employment history as a factor contributing to Claimant's respiratory impairment, citing the absence of radiographic evidence as the basis for this opinion." The ALJ further explained that Dr. Jarboe's opinion was "contrary to the regulations and border[ed] on hostility to the Act" because, though "Dr. Jarboe concede[d] that it is possible for someone suffering from pneumoconiosis to fail to exhibit symptoms on an x-ray, . . . [he] does not cite to any factors that would exclude Claimant from this category of miners suffering from the disease."

A & E Coal Company and its insurer, Old Republic Insurance Company (collectively "A & E Coal"), appealed the ALJ's decision to the Benefits Review Board. The Board affirmed.

This appeal followed.

## II.

A & E Coal argues that the ALJ violated the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, by relying on the preamble to the Black Lung Benefits Act regulations to evaluate the credibility of Dr. Rasmussen and Dr. Jarboe. A & E Coal also contends that the ALJ failed to articulate properly his findings and conclusions, as required by the APA. The Board concluded that the ALJ did not violate the APA. We review the Board's conclusion de novo. *See Peabody Coal Co. v. Greer*, 62 F.3d 801, 804 (6th Cir. 1995). Since A & E Coal disavows any challenge to the sufficiency of the evidence, we will vacate the Board's decision only if its conclusion—that the ALJ permissibly consulted the regulations' preamble—was erroneous.

In 2000, the Department of Labor amended the regulations implementing the Black Lung Benefits Act. The amended regulations clarify that a miner can have pneumoconiosis for purposes of the Act even in the absence of a positive X-ray. *See* 20 C.F.R. § 718.202(a)(4) ("A determination of the existence of pneumoconiosis may also be made by a physician, exercising sound medical judgment, notwithstanding a negative X-ray, that the miner suffers or suffered from pneumoconiosis as defined in § 718.201"); 20 C.F.R. § 718.201 ("'Legal pneumoconiosis' includes any chronic lung disease or impairment and its sequelae . . . significantly related to, or substantially aggravated by, dust exposure in coal mine employment"). The amended regulations also provide that "[n]o claim for benefits shall be denied solely on the basis of a negative chest X-ray." *Id.* § 718.202(b). In the preamble to the revised regulations, the Department explained the medical and scientific premises for the changes. For example, during the new regulations' notice-and-comment period, some doctors commented that coal-dust exposure cannot cause COPD. The Department rejected this contention, explaining in the preamble its reasons for doing so. *See, e.g.*, 65 Fed. Reg. 79,939 ("The

considerable body of literature documenting coal dust exposure's causal effect on [COPD] . . . constitutes a clear and substantial basis for this aspect of the revised definition of pneumoconiosis").

Here, in evaluating Dr. Jarboe's and Dr. Rasmussen's credibility, the ALJ cited the regulations' preamble twice, and explicitly mentioned it once. The ALJ found Dr. Rasmussen's opinion "to be very well-documented because it [wa]s consistent with medical opinions acknowledged to be well documented in the December 2000 preamble to the applicable regulations." ALJ Opinion at 18 (citing 65 Fed. Reg. 79,940 (Dec. 20, 2000); 65 Fed. Reg. 79,943 (Dec. 20, 2000)). The ALJ gave less weight to Dr. Jarboe's opinion in part because Dr. Jarboe relied on studies that had "specifically been discredited in the regulations." *Id.* at 22 (citing 65 Fed. Reg. [7]9,938–39 (Dec. 20, 2000)). The Board concluded that the ALJ "permissibly consulted the preamble as an authoritative statement of medical principles accepted by the Department of Labor when it revised the definition of pneumoconiosis."

A & E Coal argues that the ALJ's invocation of the preamble violated the APA's rulemaking requirements because the preamble was not subjected to notice-and-comment rulemaking. *See* 5 U.S.C. § 553. An agency's pronouncement must go through notice-and-comment rulemaking when the pronouncement appears "on its face to be binding, or is applied by the agency in a way that indicates it is binding." *Gen. Elec. Co. v. Envtl. Prot. Agency*, 290 F.3d 377, 383 (D.C. Cir. 2002) (citation omitted). There is nothing in the preamble here to suggest that it is binding. *Cf. Appalachian Power Co. v. Envtl. Prot. Agency*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) ("[F]rom beginning to end . . . [it] reads like a ukase. It commands, it requires, it orders, it dictates"). Nor does the ALJ's decision contain any indication that the ALJ felt bound by the preamble. The ALJ simply looked to the preamble, in addition to the applicable regulations, to assess Dr. Jarboe's and Dr. Rasmussen's credibility. The ALJ found that Dr. Jarboe's opinion conflicted with the Department's position that a negative X-ray alone should not preclude an award of benefits. The ALJ also found that Dr. Jarboe's conclusion was based on a study that was in turn premised on a proposition—that coal-

dust exposure cannot cause COPD—inconsistent with the regulations, as explained in the preamble. The ALJ similarly credited Dr. Rasmussen's opinion because it was consistent with the medical and scientific premises underlying the amended regulations, as expressed in the preamble. We therefore reject the premise of A & E Coal's argument: that the ALJ treated the preamble as binding in his decision here.

Moreover, as reflected above, the preamble merely explains why the regulations were amended. It does not expand their reach. Although the ALJ was not required to look at the preamble to assess the doctors' credibility, we agree with the Fourth Circuit "that the ALJ was entitled to do so and the Board did not err in affirming [his] opinion." *Harman Mining Co. v. Dir., Office of Workers' Comp. Programs*, 678 F.3d 305, 312 (4th Cir. 2012).

The principal case that A & E relies on—*Home Concrete & Supply LLC v. United States*, 634 F.3d 249 (4th Cir. 2011), *aff'd*, 132 S. Ct. 1836 (2012)—is inapposite. As the Fourth Circuit recently explained:

> [*Home Concrete*] provides a clear example of a regulatory preamble on which any reliance would be problematic. For there we concluded that the preamble *contradicted* the plain statutory language. For this reason, we properly refused to defer to the IRS's interpretation of the statute contained in the preamble. By contrast, here, the preamble is entirely consistent with the Act and its regulations and simply explains the scientific and medical basis for the regulations.

*Harman Mining Co.*, 678 F.3d at 315 n.4 (citation omitted). We agree with the Fourth Circuit: the preamble merely explains the regulations' bases here.

A & E Coal next argues that the ALJ's reference to the preamble violated the APA because the preamble was not in the administrative record for Adams's case. A & E Coal contends it lacked notice that the preamble would be used by the ALJ in making its findings here. *See* 5 U.S.C. §§ 554, 556. This argument is meritless. "[T]he APA does not provide that public law documents, like the Act, the regulations, and the preamble, need be made part of the administrative record." *Harman Mining Co.*,

678 F.3d at 316. And, as the Fourth Circuit observed, there is no authority to the contrary.

A & E Coal's final argument is that the ALJ did not comply with the APA's requirement that he articulate his "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). Section 557(c)(3)(A) imposes on the ALJ a duty accurately and specifically to reference the evidence supporting his decision. *Morehead Marine Servs., Inc. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998). To resolve Adams's claim, the ALJ had to choose between two conflicting medical opinions. The ALJ thoroughly discussed the deposition testimony and reports of Dr. Rasmussen and Dr. Jarboe. He also explained the reasons for his credibility determinations. He gave Dr. Jarboe's opinion less weight not only because it was at odds with the regulations but also because it was "inexplicable based on other credible scientific data." For example, Dr. Jarboe did not coherently explain why Adams experienced a 2,710 milliliter forced-expiratory-volume-in-one-second (FEV1) loss when pack-a-day smokers experience a 5 milliliter loss per year before age 40 and, at most, a 60 milliliter loss per year thereafter. The ALJ's conclusion that Dr. Rasmussen's opinion was sufficiently reasoned but that Dr. Jarboe's was not is a matter of credibility, which we cannot revisit. *See Peabody Coal Co. v. Groves*, 277 F.3d 829, 836 (6th Cir. 2002). Thus, the ALJ accurately and specifically referenced the evidence supporting his conclusions. The Board was correct to affirm his decision.

We deny the petition for review.