NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0211n.06

Case No. 23-3779

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 09, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| LANCE COAL CORPORATION, c/o Reading & Bates Corporation, | ) ) ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF A DECISION AND ORDER OF THE BENEFITS REVIEW BOARD |
| v. | ) ) | |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; FREDA COMBS, o/b/o and widow of Virgil Combs, deceased, | ) ) ) ) ) ) ) | OPINION |
| Respondents. | ) | |

Before: BATCHELDER, THAPAR, and MATHIS, Circuit Judges.

THAPAR, Circuit Judge. Lance Coal Corporation petitions to appeal an award of federal black-lung benefits to Freda Combs on behalf of her deceased husband, Virgil. We deny the petition.

I.

A.

Virgil Combs worked for Lance Coal Corporation for six years. As a member of the powder crew, he followed a truck that drilled holes into the ground. Combs would then fill the holes with explosives, cover them with dirt, and detonate the charges—blasting open the rock layer

and shooting debris into the air. After years of work, Combs started having difficulty breathing. So he filed a claim under the Black Lung Benefits Act.

Congress enacted the Black Lung Benefits Act (BLBA) to provide benefits to certain coal miners and their dependents for pneumoconiosis caused by their employment. 30 U.S.C. §§ 901–44. Pneumoconiosis is a class of respiratory diseases that occur when dust particles lodge in a person's lungs. *See Pneumoconioses*, Nat'l Inst. for Occupational Safety & Health, https://www.cdc.gov/niosh/topics/pneumoconioses/default.html. Coal miners are common victims because drilling and blasting rock release particles into the air that miners breathe.

To be eligible for benefits, a miner must show he has pneumoconiosis arising out of his coal mine employment, he is totally disabled, and pneumoconiosis substantially contributed to his disability. *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018); 20 C.F.R. § 725.202(d)(2). Because pneumoconiosis often manifests after a miner has left coal work, a miner whose claim was initially denied can bring another claim later. He need only show that he now meets an element he previously didn't. 20 C.F.R. § 725.309(c).

There are two types of pneumoconiosis: clinical and legal. *Id.* § 718.201(a). Clinical pneumoconiosis is a narrow category of respiratory diseases that fit the medical definition of pneumoconiosis. *Id.* It is normally diagnosed with chest x-rays. *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 597 (6th Cir. 2014). Legal pneumoconiosis, on the other hand, encompasses a broader, "remainder category" of respiratory ailments that are caused in part by coal dust exposure. *Id.*; 20 C.F.R. § 718.201(a). Either can support a claim for benefits.

B.

This appeal follows the second of two BLBA claims. The Office of Workers Compensation Programs denied Combs's first claim. Four years later, Combs filed a second claim,

which an administrative law judge (ALJ) denied after concluding pneumoconiosis didn't cause his total disability. Combs filed a request for modification of the denial. *See* 20 C.F.R. § 725.310. But Combs died before any final decision on the matter. His widow, Freda, then filed a survivor claim. Her claim was consolidated with her late husband's request for modification, and the case was assigned to ALJ Larry Merck. After reviewing Combs's medical records, ALJ Merck awarded benefits. The Benefits Review Board ("Board") affirmed. This appeal followed.

## II.

Lance Coal challenges the ALJ's finding of legal and clinical pneumoconiosis arising out of Combs's coal mine employment. We review the ALJ's legal conclusions de novo and his finding of pneumoconiosis for substantial evidence. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013). Substantial evidence is evidence that allows a "reasonable mind" to reach the ALJ's conclusions. *Id.* (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985)). So we'll reverse the ALJ only if no reasonable person could've decided that Combs had (A) legal pneumoconiosis or (B) clinical pneumoconiosis from his coal mine work.

## A.

In determining whether Combs contracted legal pneumoconiosis from coal dust exposure, the ALJ considered medical reports from five doctors: Dr. Forehand, Dr. Jarboe, Dr. Castle, Dr. Rasmussen, and Dr. Ranavaya. The ALJ found Dr. Forehand's report, which concluded Combs had legal pneumoconiosis from coal dust, to be well-reasoned and credible. The ALJ found the other four reports poorly reasoned and afforded them little weight. On appeal before the Board, Lance Coal didn't develop any arguments challenging the ALJ's decision to discredit Dr. Castle's

and Dr. Rasmussen's opinions.[1]  So Lance Coal has forfeited any argument regarding those two doctors.  *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 749 (6th Cir. 2019).  That leaves Drs. Forehand, Jarboe, and Ranavaya.

Lance Coal argues that the ALJ erred in crediting Dr. Forehand's opinion and discounting those of Drs. Jarboe and Ranavaya.  Because the ALJ based his conclusion on conflicting medical reports, our review is "exceedingly narrow."  *Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir. 2003).  We won't question the ALJ's well-reasoned credibility determinations.  *A & E Coal Co. v. Adams*, 694 F.3d 798, 803 (6th Cir. 2012).  And we will grant Lance Coal's petition only if the ALJ's determination was unsupported by substantial evidence or contrary to applicable law. *Peabody Coal*, 342 F.3d at 489.  Lance Coal's arguments can't survive this hurdle.  We address those arguments below, doctor by doctor.

1.

Start with Dr. Forehand.  In forming his conclusions, Dr. Forehand conducted a physical examination of Combs.  Dr. Forehand then reviewed Combs's occupational and medical history, previous smoking habit, list of symptoms, a chest x-ray, and other test results.  When testifying, Dr. Forehand pointed to medical studies showing that short, intense exposures to silica dust—like what Combs experienced while working on the powder crew—could cause an accelerated form of pneumoconiosis.  Dr. Forehand eventually diagnosed Combs with legal pneumoconiosis after concluding that Combs's smoking habit and coal dust exposure combined to weaken Combs's

---

[1] Lance Coal says it did dispute Dr. Rasmussen's credibility before the Board.  It relies on one sentence in its brief below:  "This case should be resolved as ALJ Romano resolved it on remand: by . . . recognizing that Dr. Rasmussen did not diagnose legal pneumoconiosis within the meaning of the BLBA."  Pet'r Br. 32 n.89.  But a "conclusory argument" that doesn't point to "any alleged errors" is insufficient.  *Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 466 (6th Cir. 2022).

lungs and cause his respiratory problems. The ALJ credited Dr. Forehand's medical opinion and awarded benefits in reliance on it.

Lance Coal makes several attempts to show that reliance was mistaken. None is availing.

First, Lance Coal argues that the ALJ's decision to credit Dr. Forehand's opinion is an unreasoned "summary finding" that prevents adequate review. Pet'r Br. 14. We disagree. The ALJ carefully outlined Dr. Forehand's qualifications, the materials he relied on, and the bases for his conclusions. He then gave specific reasons for why he credited Dr. Forehand's report. These included the report's reliance on a correct occupational history, its accurate description of Combs's exposure conditions, and its consistency with the Labor Department's views on the interaction between smoking and coal dust exposure. Nothing about that analysis is unreasoned. True, the ALJ didn't explicitly compare Dr. Forehand's qualifications to those of Drs. Jarboe and Ranavaya. But qualifications are just one of many factors an ALJ could use to assess an expert's credibility. And although Lance Coal might have preferred the ALJ focus more on qualifications, his focus on the medical evidence doesn't render his decision unreasoned.

Next, Lance Coal claims Dr. Forehand's opinion was unsupported by substantial evidence. Namely, it argues there's insufficient evidence to support his conclusion that Combs's coal mining caused his respiratory problems. This causation argument takes on various forms.

Initially, Lance Coal says Dr. Forehand's total-disability finding "conflates disease causation with disability." *Id.* at 16. In other words, the mere presence of total disability doesn't entitle Combs to benefits. But Dr. Forehand's opinion didn't say otherwise. Rather, Dr. Forehand considered the effect of coal and silica dust on lungs and relied on his own experience examining thousands of miners. His testimony also pointed to studies supporting a causal link between silica-

dust exposure (even for a short time) and lung disease. As the ALJ observed, some of those studies were cited by the Department of Labor itself in the Preamble to the BLBA regulations.

Lance Coal responds that the miners in those studies suffered from a form of *clinical* pneumoconiosis, not the legal pneumoconiosis Combs experienced. But Dr. Forehand addressed that distinction. He explained that just as silica exposure could lead to clinical pneumoconiosis, it could also manifest as one of the broader forms of legal pneumoconiosis. Lance Coal accuses Dr. Forehand of "us[ing] a negative inference to affirmatively prove something"—i.e., because legal pneumoconiosis *can* exist without the clinical form, legal pneumoconiosis *must* exist here. *Id.* at 20. But Dr. Forehand didn't employ such faulty logic. He pointed to the unique circumstances of Combs's case—his smoking history, the intensity of his exposure, and his genetics—that all affect how the disease might manifest. Dr. Forehand then drew a causal conclusion based on his observations and experience. The ALJ credited this conclusion despite the differences between the cited studies and Combs's case. It's not our job to reweigh that evidence. *Wilkerson*, 910 F.3d at 258.

Doubling down, Lance Coal suggests smoking alone could have caused Combs's symptoms. But we have previously upheld a finding of legal pneumoconiosis even if the symptoms could be caused exclusively by smoking. *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1059 (6th Cir. 2013). That holding applies here. Although Dr. Forehand didn't quantify the exact amounts that smoking and coal dust each contributed to Combs's condition, he was certain coal dust worsened Combs's condition. As noted above, substantial evidence supports the ALJ's decision to credit that conclusion.

Finally, to the extent Lance Coal argues the ALJ misapplied the law, it is wrong. The ALJ cited the correct standard: Combs needed to show only a preponderance of the evidence that his

coal mine work was partially to blame for his disease. *Arch on the Green*, 761 F.3d at 599. Nor did the ALJ improperly apply this standard. Lance Coal claims the ALJ erroneously applied a presumption that coal and smoking always damage the lungs in combination. Not so. True, the ALJ cited the Preamble, which suggests smoking and coal dust can have an additive effect on lung problems. *Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969*, 65 Fed. Reg. 79,920, 79,940 (Dec. 20, 2000). But he did so to credit Dr. Forehand's opinion as consistent with those regulations, not to apply a bright-line rule. When ALJs are assessing the credibility of a medical report in BLBA cases, they may look to the Preamble for insight. *Adams*, 694 F.3d at 802. The ALJ properly did so here.

2.

Next, there's Dr. Jarboe. In concluding that Combs didn't have legal pneumoconiosis, Dr. Jarboe considered Combs's occupational and smoking history, his medical symptoms, and certain test results. He noted Combs suffered from asthma and a chronic obstructive pulmonary disease (COPD) known as pulmonary emphysema. But Dr. Jarboe concluded that Combs's asthma, smoking history, and heart disease—not his coal dust exposure—caused the emphysema. In his opinion, coal dust inhalation never causes asthma. And he declined to classify Combs's pulmonary emphysema as a form of legal pneumoconiosis because there was no "dust retention" on his chest x-rays.

The ALJ found Dr. Jarboe's opinion unpersuasive. The ALJ took issue with Dr. Jarboe's assertion that coal dust inhalation can't cause asthma, since it conflicted with the Preamble. *See* 65 Fed. Reg. at 79,939. And, contrary to Dr. Jarboe's report, the Preamble also supported the conclusion that emphysema could constitute legal pneumoconiosis even without visible dust retention on x-rays. *See id*. at 79,97l. The ALJ also pointed out that Dr. Jarboe never explained

why coal dust couldn't be a contributing cause to Combs's lung condition in addition to the other causes Dr. Jarboe identified. In sum, the ALJ concluded Dr. Jarboe's opinion was contrary to the regulations and entitled to little weight.

In response, Lance Coal suggests the ALJ erred by requiring Lance Coal to *disprove* the role coal dust exposure played and by presuming that all asthma constituted legal pneumoconiosis. Here again, Lance Coal misreads the ALJ's conclusions.

First, the ALJ never shifted the burden to Lance Coal. Instead, the ALJ assessed whether Dr. Jarboe's explanation—that Combs's years of heavy exposure to coal and silica had no effect on his lung disease—made sense. An ALJ may assess the credibility of medical opinions based on how persuasively they explain a disease's causes. *Cf., e.g.*, *Huscoal, Inc. v. OWCP*, 48 F.4th 480, 492–93 (6th Cir. 2021); *Adams v. OWCP*, 886 F.2d 818, 826 (6th Cir. 1989). And it wasn't unreasonable for the ALJ to find more persuasive Dr. Forehand's explanation that both coal dust and smoking caused Combs's disability.

Nor did the ALJ create a blanket rule that all emphysema is legal pneumoconiosis. Rather, the ALJ pointed out that Dr. Jarboe's opinion conflicted with the Department's regulations. *See* 65 Fed. Reg. at 79,971 (noting legal pneumoconiosis can exist "regardless of whether a miner shows x-ray evidence"). That inconsistency is a valid reason to discredit a medical expert's opinion. *See Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 487–88 (6th Cir. 2012) (upholding the same reasoning from the same ALJ discounting the same doctor's medical opinion). Substantial evidence thus supported the ALJ's decision to discredit Dr. Jarboe's opinion.

3.

Dr. Ranavaya also concluded Combs didn't suffer from legal pneumoconiosis. Dr. Ranavaya considered Combs's physical, occupational, and medical history, including test results

and Combs's asthma and COPD diagnoses. Although both asthma and COPD can constitute legal pneumoconiosis, Dr. Ranavaya concluded that Combs's ailments weren't caused by coal dust exposure. He attributed Combs's asthma entirely to smoking. And he opined that Combs's COPD was a misdiagnosis stemming from "[r]epeated episodes of asthma." JA 191–92.

The ALJ found Dr. Ranavaya's opinion unpersuasive. Most importantly, though Dr. Ranavaya never treated Combs, he assumed—without offering any explanation—that Combs's treating physicians misdiagnosed him. Nor did he explain his conclusion that Combs's asthma was unrelated to coal dust exposure. To be sure, Dr. Ranavaya noted that asthma and COPD can cause similar effects on the lungs. Beyond that, Dr. Ranavaya offered no affirmative evidence for why those similarities caused the other doctors to misdiagnose Combs. By contrast, the ALJ pointed out that Combs's physicians had "numerous occasions" to evaluate him and had credentials to support their diagnosis. *Id.* at 241. Taken together, the ALJ concluded Dr. Ranavaya's misdiagnosis theory was mere speculation and didn't outweigh the opinions of Combs's treating physicians. Accordingly, the ALJ afforded Dr. Ranavaya's conclusion little probative weigh.

In response, Lance Coal first argues the ALJ automatically accepted the evaluating physician's analysis over Dr. Ranavaya's. It's true that ALJs may not reflexively presume treating physicians are more credible than other experts. *See Eastover Mining Co. v. Williams*, 338 F.3d 501, 511–13 (6th Cir. 2003). But that's not what happened here. Treating physicians can "have a thorough understanding of a miner's pulmonary condition" that a reviewing physician doesn't. *Id.* at 512; 65 Fed. Reg. at 79,932. ALJs may consider that reality in weighing physician testimony, as the ALJ did here: he contrasted the treating physicians' thorough understanding of Combs's

condition with Dr. Ranavaya's unexplained conclusion. Since the treating physicians' conclusions had greater explanatory power, the ALJ reasonably credited them over those of Dr. Ranavaya.

Second, Lance Coal claims the ALJ exceeded his judicial role by interpreting the medical data himself. Again, that's not what happened. The ALJ didn't reinterpret the data to disagree with Dr. Ranavaya that COPD and asthma have similar effects. He instead pointed out that *even if that were true*, the Preamble clarifies that both COPD and asthma can support a diagnosis of legal pneumoconiosis. Since Dr. Ranavaya failed to explain why he disagreed, the ALJ permissibly discredited his opinion.

\*

In sum, Lance Coal's attacks on the ALJ's finding of legal pneumoconiosis fall short. Although it's possible another ALJ might've reached a different conclusion—and Lance Coal understandably wishes the ALJ had done so here—it is not our place to second guess his evidence-based judgment.

B.

Lance Coal also challenges the ALJ's clinical pneumoconiosis finding. Yet a finding of legal pneumoconiosis—even without clinical pneumoconiosis—can support a miner's claim for benefits. Because the ALJ's legal pneumoconiosis conclusion rested on substantial evidence, we need not address clinical pneumoconiosis.

Arguing otherwise, Lance Coal claims the ALJ predicated his witness-credibility determinations on his clinical pneumoconiosis finding. Thus, Lance Coal argues, we can't address legal pneumoconiosis without also addressing clinical pneumoconiosis. We disagree. The ALJ correctly noted that legal pneumoconiosis is far broader than clinical pneumoconiosis and that the former can exist without the latter. And Lance Coal fails to identify where the ALJ relied on his

clinical pneumoconiosis conclusion to discredit the medical reports regarding legal pneumoconiosis. Because it failed to develop the argument by referencing where the ALJ relied on this finding, Lance Coal forfeited the argument. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

## III.

One final procedural issue remains. Because an ALJ had already denied Combs's second petition, Combs needed to show that the previous ALJ made a factual mistake or that conditions had changed before obtaining a modification of that order. 20 C.F.R. § 725.310(a). Modification must also bring about a just result. *O'Keeffe v. Aerojet-Gen. Shipyards, Inc.*, 404 U.S. 254, 255–56 (1971) (per curiam); *Star Fire Coals, Inc. v. OWCP*, 792 F. App'x 372, 377 (6th Cir. 2019). ALJ Merck concluded Combs passed both prongs. Lance Coal challenges this conclusion on two grounds.

First, Lance Coal argues ALJ Merck incorrectly reviewed the evidence de novo, rather than deferring to the previous ALJ. When determining whether a claimant's record contains a mistake of fact, an ALJ is entitled to independently reweigh the evidence and need not accept any previous ALJ's opinion.[2] *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 743 (6th Cir. 1997) (noting that ALJs have "the authority, if not the duty, to rethink prior findings of fact and to reconsider all evidence for any mistake in fact or change in conditions"). Unlike motions for reconsideration under the Federal Rules of Civil Procedure, the BLBA outlines a liberal standard for review that grants "broad discretion" to reconsider facts and reverse prior findings. *See O'Keeffe*, 404 U.S. at

---

[2] At multiple points in its briefing, Lance Coal claims the previous ALJs' opinions were correct and should be reinstated. Those claims are irrelevant. Because an ALJ may independently reweigh record evidence, it's possible a previous ALJ's opinion could be supported by substantial evidence but nonetheless be reversed by a subsequent ALJ.

256 (discussing 33 U.S.C. § 922); 30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 922); *Youghiogheny*, 200 F.3d at 954. ALJ Merck properly exercised that discretion here.

Second, Lance Coal claims ALJ Merck should have addressed the justice component *before* reweighing the evidence. Yet nothing in our case law suggests a rigid order of operations. If anything, it makes most sense to proceed in the order ALJ Merck did. If the justice analysis came first, an ALJ might conclude modification wouldn't render justice and end the analysis there. But that would violate the regulations, which *require* ALJs to consider and weigh the evidence. 20 C.F.R. § 725.310(c) ("In any case forwarded for a hearing, the [ALJ] . . . *must* consider . . . whether the evidence of record demonstrates a mistake in a determination of fact." (emphasis added)). Since the ALJ must weigh the evidence, it makes sense to address that mandatory obligation first. Only if there is a mistake of fact should the ALJ consider the secondary issue of rendering justice.

\* \* \*

The ALJ's finding that Combs's coal mine employment caused his pneumoconiosis was supported by substantial evidence. We therefore deny the petition.